638 A.2d 233

**Janine GUNTER, Appellee,**

**v.**

**CONSTITUTION STATE SERVICE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 7, 1993.

Filed March 4, 1994.

296

Dianne A. Dichter, Philadelphia, for appellant.

Allan J. Sagot, Philadelphia, for appellee.

Before POPOVICH, JOHNSON and HOFFMAN, JJ.

POPOVICH, Judge:

The Defendant/Appellant, Constitution State Service Company, appeals the order (reduced to judgment thereafter [1]) of the Court of Common Pleas of Philadelphia County denying its motion for post-trial relief. We affirm in a case of first impression.

The facts of record disclose that on the 17th day of November, 1988, the Plaintiff, Janine Gunter, walked across one-half of a light-controlled intersection at Old York Road and 66th Avenue in Philadelphia. She came to rest on an island separating the lanes of traffic. Before proceeding, she looked to her right and observed a van stopped at the red light. With the traffic at a standstill, the Plaintiff proceeded across the remaining portion of the roadway when "a car came from behind the van and hit" her. The Plaintiff was knocked to the ground and needed the assistance of some employees at a nearby business to remove her to a safe location.

The striking vehicle left the scene and could not be identified by the Plaintiff. Shortly after the incident, the Philadelphia Fire Rescue Squad, consisting of two emergency medical technicians (EMT), was dispatched to the location and placed a flexible cast on the Plaintiff's leg before transporting her to the hospital. The Plaintiff spoke to no police officer either at the scene or at the hospital, from where she was released the same day.

The Plaintiff testified at trial, to which the Defendant objected on hearsay grounds, that once discharged from the hospital she did not file a report with the police because, as she told it:

When I talked—when the guy in the ambulance was talking to me he took the report and he said he would take care of it.

1. Pa.R.App.P. 301 requires that an order be reduced to judgment in advance of taking an appeal. In this case, even though the Appellant praeciped to reduce the order denying post-trial motions to judgment after the appeal was perfected, the reduction to judgment satisfies the requirement of Rule 301 to allow for our review of the case.

All parties agree that no report has been located as filed with the Philadelphia police department.

The Plaintiff was the sole witness to testify at the bench trial, after which the court entered an award in favor of the Plaintiff and against the Defendant in the amount of $6,000.00 for pain and suffering and $3,948.25 for medical bills. Post-trial motions were denied and this appeal was perfected by the Defendant as the assignee (for statutory first party medical and uninsured motorist benefits) under the Assigned Claims Plan operated pursuant to the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. § 1701 *et seq.* Benefits were denied by the Appellant on the basis that the Appellee did not file a report of the accident with the police under the Appellant's interpretation of the MVFRL.

■ On appeal, the Appellant raises two issues for our consideration; to-wit:

I. Whether an Assigned Claims Plan claimant who reports an accident involving an unidentified motor vehicle only to the Philadelphia Fire Rescue Squad has reported the accident to a "proper governmental authority" within the meaning of 75 Pa.C.S.A. § 1702 so as to render the striking vehicle uninsured?

II. Whether the Plaintiff/Appellee's testimony regarding a statement made to her by an Emergency Medical Technician, who she failed to call as a witness at trial,[2] should have been admitted into evidence?

Appellant's Brief at 2. We respond to the last issue first, for if the Plaintiff's complained-of testimony referring to the EMT employee's offer to report the accident to the police was excludable on hearsay grounds, the reporting requirement of the MVFRL was not satisfied and the Plaintiff is not entitled to benefits.

■ It is well-established in this Commonwealth that "nothing is more adamantly established in American trial procedure

2. Counsel for the Plaintiff stated at trial that the EMT employee who treated the Plaintiff was on disability and a continuance could not be obtained to have him appear as a witness at trial.

than that no one may testify to what somebody else told him[/her]." *Johnson v. People Cab Co.,* 386 Pa. 513, 126 A.2d 720, 721 (1956). The hearsay nature of the evidence is rendered inadmissible unless it qualifies under one of the recognized exceptions to that rule. 5 Wigmore, *Evidence* § 1420 *et seq.* (Chadbourn Rev.1974); McCormick, *Evidence* § 249 (2d ed. 1972).

If the statement of the Plaintiff in refraining from filing a report with the police, on the strength of the EMT employee's statement that he "would take care of it," were offered to prove the truth of the content of the EMT employee's remarks, the statement would be clearly hearsay. See *Commonwealth v. Smith,* 523 Pa. 577, 568 A.2d 600 (1989), wherein our Supreme Court responded to a similar evidentiary claim in a criminal setting, the applicability of which is just as germane to the civil case facing us; to-wit:

> The predicate supporting the rejection of hearsay evidence is its assumed unreliability because the declarant from which the statement originates is not before the trier of fact and therefore cannot be challenged as to the accuracy of the information sought to be conveyed.

> \* \* \* \* \* \*

> The hearsay concern is not present where statements of an out-of-court declarant are not being offered for the truth of the content of those statements. For instance, a witness may testify to a statement made to him when the purpose of its introduction is the fact that the statement was, in fact, made. . . . Similarly, we have recognized that out-of-court statements which are offered to prove the declarant's state of mind are not within the interdiction of the hearsay rule. . . .

> In this instance the [Appellee] argues the testimonial value of these statements was the effect they had upon the listeners. The key to the admission of evidence for this purpose is that no assertive or testimonial use is sought to be made of the content of the utterance. . . . The test for

relevancy is whether the proffered evidence tends to make a material fact more or less probable.

*Id.* at 593–94, 568 A.2d at 608–09 (Citations omitted).

At bar, the Appellee was not concerned with proving the truth of the statement made by the EMT employees, i.e., he would notify the police of the accident. Rather, she was preoccupied with establishing her state of mind at the time the conversation took place. She had just been struck and injured by a "hit and run" vehicle, and she reported the incident to an emergency medical technician en route to the hospital. She believed the incident would be reported to the police because of the technician's remarks to that effect.

Viewed in such a light, we agree with the court that no evidentiary rules were violated in permitting the Appellee to testify to what she told the EMT employee and his response thereto. *Id.* The linchpin to admissibility is that the *remarks were made* and not whether the EMT employee carried out his statements to notify the police of the occurrence of the accident on behalf of the Appellee. Thus, we hold meritless the hearsay claim raised by the Appellant, concluding that the remarks testified to were both relevant (they increased the probability of a material fact at issue—whether the Appellee communicated to the EMT employee about the "hit and run") and admissible. *Id.*

■ To obtain benefits through the Assigned Claims Plan, one must meet the eligibility requirements of 75 Pa.C.S.A. § 1752. *Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 427 Pa.Super. 105, 628 A.2d 847 (Pa.Super., filed May 28, 1993). Section 1752 provides:

(a) General rule.—A person is eligible to recover benefits from the Assigned Claims Plan if the person meets the following requirements:

(1) Is a resident of this Commonwealth.

(2) Is injured as the result of a motor vehicle accident occurring in this Commonwealth.

(3) Is not an owner of a motor vehicle required to be registered under Chapter 13 (relating to registration of vehicles).

(4) Is not the operator or occupant of a motor vehicle owned by the Federal Government or any of its agencies, departments or authorities.

(5) Is not the operator or occupant of a motor vehicle owned by a self-insurer or by an individual or entity who or which is immune from liability for, or is not required to provide, benefits or uninsured and underinsured motorist coverage.

(6) Is otherwise not entitled to receive any first party benefits under section 1711 (relating to required benefits) or 1712 (relating to availability of benefits) applicable to the injury arising from the accident.

As amended, Act of February 12, 1984, P.L. 53, No. 12, § 3, 75 Pa.C.S.A. § 1752. The Appellant concedes that if the Appellee is found to have complied with Section 1752(a)(3), she is an eligible claimant and entitled to benefits under the Assigned Claims Plan. See N.T. 10/15/92 at 20.

Because the Appellee was not covered under any source of motor vehicle insurance when she was struck while crossing a roadway, she had the burden of proving that the vehicle which struck her was uninsured. Section 1702 of the MVFRL defines "uninsured motor vehicle", as is herein relevant:

(3) An unidentified motor vehicle that causes an accident resulting in injury provided the accident is *reported to the police or proper governmental authority* and the claimant notifies his insurer within 30 days, or as soon as practicable thereafter, that the claimant or his legal representative has a legal action arising out of the accident.

As amended, Act of February 7, 1990, P.L. 11, No. 6, § 7, 75 Pa.C.S.A. § 1702 (Supp.1993) (Emphasis added).

All parties agree, and our research confirms the fact, that nowhere in the statute or case law (of this or other jurisdictions) has the language "proper governmental authority" been interpreted. Thus, resolution of whether the Appellee's com-

munication to an EMT employee of the accident satisfies the notice requirement under the MVFRL to a "proper governmental authority" requires us to construe Section 1702. When construing statutory provisions, this Court is guided by the Statutory Construction Act of 1972. 1 Pa.C.S.A. § 1501 *et seq.* "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a); see also *Frontini v. Pennsylvania Dept. of Trans.*, 527 Pa. 448, 593 A.2d 410, 411–12 (1991). On this same point, and in analyzing the same statutory provision under different facts, this Court has remarked:

> ... in interpreting the Uninsured Motorist Act, and the No–Fault Act (repealed and replaced by the MVFRL), the statutes are to be construed liberally. *Brader v. Nationwide Mutual Insurance Co.*, 270 Pa.Super. 258, 264, 411 A.2d 516, 519 (1979). Our Supreme Court stated in *Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 395, 241 A.2d 112, 115 (1968), that "[t]he purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers." The MVFRL's chief policy goal is the establishment of a liberally compensatory scheme of uninsured and underinsured motorist protection. Ronca, Sloane and Mundy, *Pennsylvania Motorist Vehicle Insurance: An Analysis of the Financial Responsibility Law*, (1968), p. 96. The liberal compensatory intent of the Uninsured Motorist Act is preserved, if not strengthened, in the MVFRL, because the MVFRL has essentially adopted the language of the Uninsured Motorist Act as to the purpose of uninsured motorist coverage. The MVFRL states, in pertinent part:
>
>> Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured vehicles. 75 Pa.C.S. § 1731(b).

*Hatcher v. Travelers Insurance Co.*, 421 Pa.Super. 225, 617 A.2d 808, 810 (1992).

Lastly, we add the precept that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b); see also *Rivenbark v. Pennsylvania Bd. of Probation & Parole*, 509 Pa. 248, 501 A.2d 1110, 1114 (1985).

The phrase "proper governmental authority" in Section 1702 is not clear and unambiguous. Nor has the language under scrutiny been the subject of interpretation by case law. As such, we need to peruse other sources to supplement our research, being ever vigilant to achieve the legislature's principal goal of establishing a liberally compensatory scheme. *Hatcher,* supra; *Sturkie v. Erie Insurance Group*, 407 Pa.Super. 117, 595 A.2d 152 (1991).

We commence with the case of *Dixon v. Motor Vehicle Accident Indemnification Corp.*, 56 A.D.2d 650, 391 N.Y.S.2d 898 (1977), wherein the appellate division of the Supreme Court of New York was confronted with an appeal from an order denying the Appellant/Dixon's motion for leave to sue to recover monies claimed due from a governmental agency comparable to Pennsylvania's Assigned Claims Plan, i.e., the Motor Vehicle Accident Indemnification Corporation (MVA-IC).

The Appellant's claim in *Dixon* was refused by MVAIC because the report of the hit-and-run accident was not made by the Appellant/victim to the police within 24 hours of the accident. Rather, an eyewitness dialed "0" from a nearby phone and asked the operator to contact the police and an ambulance. The ambulance arrived and removed the victim to the hospital, where the eyewitness remained with the victim. It was conceded that the police never arrived at the scene or hospital and counsel for the Appellant admitted that, if the police were called, the authorities would state they had no record of the accident.

In reversing, the New York court made statements germane to the case at bar; to-wit:

It must be noted that the statute does not require the injured party to make the report. Subdivision [b] of section 608 of the Insurance Law states that the protection provided by the MVAIC is available to "[a]ny qualified person having a cause * * * of action * * * arising out of a motor vehicle accident * * * reported within twenty-four hours" (see, also, *Matter of Davis [MVAIC]*, 33 A.D.2d 663, 305 N.Y.S.2d 12). Moreover, the statute is silent regarding the type of report which is to be made to the police. In *Gordon v. Motor Vehicle Acc. Ind. Corp.* [90 Misc.2d 382, 394 N.Y.S.2d 509 (N.Y.Sup.1976). (NYLJ, Aug. 4, 1976 p. 9 col. 3) petitioner, injured by a hit-and-run driver, called the police several hours after the accident through the police emergency number, "911". Petitioner in *Gordon* was unable to discover if the police had in fact received the call. The insurer argued that it would be impossible to refute this type of testimony and that notice through the emergency telephone number, "911", did not satisfy the statute.

The court in *Gordon* granted petitioner's application, noting that the legislative purpose in establishing the MVAIC was to afford the injured person the same protection he would have if the tort-feasor were covered by insurance and that the statute should be liberally construed to serve rather than defeat those ends.... Moreover, it is evident that the Legislature provided for prompt notification to the police in order to prevent the filing of fraudulent claims ... In *Matter of Casanova v. Motor Vehicle Acc. Ind. Corp*, 36 Misc.2d 489, 490, 232 N.Y.S.2d 713, 714, the court stated that "[a] failure by the Police Authorities to record the report does not invalidate an otherwise proper claim."

It is clear, therefore, that each application brought pursuant to this statute must depend upon the evidence adduced and the credibility of the witnesses.

In our view the testimony of the disinterested witness, that he saw the hit-and-run accident and thereupon called the telephone operator and advised her to call the police and an ambulance, could satisfy the notice requirement of the

statute, if the Special Term believed that the operator in fact called the police.

391 N.Y.S.2d at 900 (Citations omitted in part).

At bar, as in *Dixon*, the statute does not stipulate that *only* the injured party is permitted to make an accident report to police,[3] nor does the statute detail the manner in which the report is to be made to the *police*, i.e., in writing or orally.[4] See *Hatcher*, supra (No written report need be produced by claimant to establish communicating "hit and run" accident to police; question of fact for factfinder to decide).

Likewise, we do not subscribe to the view espoused by the Appellant that the Pennsylvania Department of Transportation would be the only other "proper governmental authority" to whom an accident could be reported. See Appellant's Brief at 18. We find most compelling the fact that in the definitional section of the MVFRL (75 Pa.C.S.A. § 1702) both terms appear: "Department", which includes the Department of Transportation or Insurance Department, and "uninsured motor vehicle", whereby the latter makes no reference to the term "department" as the optional governmental body (in addition to the police) to which a report could be made if an accident by an unidentified vehicle occurred. Rather, the Legislature inserted the phrase "proper governmental authority" as the alternative source with whom a report could be lodged involving an "uninsured motor vehicle." We may not merely ignore such a fact.

Because of the liberal interpretation accorded the MVFRL, we read "governmental authority" to embrace, given its context and location in the statute regarding *reporting* requirements, the party receiving the information and (of necessity) equating him/her with an "agent" of the governmental body engaged in the performance of a governmental "function" at the time "reporting" transpires. As much can be garnered

3. See 75 Pa.C.S.A. § 3746(b) (Duty of occupant to give notice of accident if driver disabled).

4. *Id.* at § 3747 (Written report to Department of Transportation by driver or owner if police do not investigate accident).

from Black's Law Dictionary (6th ed. 1990) at 695 & 696, which defines the preceding terminology thusly:

Governmental agents. Those performing services and duties of a public character for benefit of all citizens of community. The term includes firemen and policemen.

\* \* \* \* \* \*

Governmental functions. The functions of a municipality which are essential to its existence, in sense of serving public at large, and are to be distinguished from those which are private, which are not necessary to its existence, and which enure to advantage of its inhabitants. Activities which are carried on by city, pursuant to state requirement, in discharge of state's obligation for health, safety or general welfare of public generally, or which are voluntarily assumed by city for benefit of public generally rather than for its own citizens, are performed in governmental capacity and as "governmental function".

Governmental. Of, pertaining to, or proceeding from government. [Citations omitted]

Instantly, the Philadelphia Fire Rescue Squad is the by-product of that first class City's efforts to implement the Emergency Medical Services Act, 35 P.S. § 6921 *et seq.,* which is a coordinated program to assure that the Commonwealth's emergency medical services will be handled by communicative facilities which are accessible to the general public through a common telephone number (e.g., "911"). In particular, Section 12–102 of Philadelphia Traffic Code defines emergency vehicles to include police *and* fire departments. Section 12–310 provides that firemen may assist the police in directing traffic at the scene of a fire and that no person shall fail or refuse to comply with any lawful order or direction of a fireman assisting the police. Thus, it would appear, the two departments have some co-extensive functions.

Further, of interest to this Court is the fact that a volunteer fire company has been considered a "local agency" for purposes of being granted immunity from suit under 42 Pa.C.S.A. § 8541. See *Guinn v. Alburtis Fire Co.,* 531 Pa. 500, 614 A.2d

218 (1992). Upon closer examination of the statute, we learn that "local agency" is defined as a "government unit other than the Commonwealth government." 42 Pa.C.S.A. § 8501. A "government unit" includes any government agency. *Id.* at § 102. A "government agency" includes any political subdivision, or any officer or agency of any such political subdivision. *Id.*

■ Therefore, we find that a fire rescue service created, maintained and governed by a city to benefit the health, safety or welfare of the public is a "unit" of "local government/agency." *Id.;* Black's Law Dictionary, supra; cf. *Schulmeister v. Union Tp. Ambulance,* 35 Pa.D. & C.3d 83 (1984) (An ambulance service which is an independent, nonprofit corporation that is neither a subordinate governmental activity of a township nor an agency of the municipality is not immune from suit under Municipal Tort Claims Act, 42 Pa.C.S.A. § 8541). This translates into a determination that as a "unit" of local government, the employees of Philadelphia's Fire Rescue Squad would be entitled to immunity from suit while in the performance of their duties as health care provider or involvement in charitable work on behalf of the "local agency." Cf. *Guinn,* supra.

Based on the preceding, we find it appropriate to hold that members of Philadelphia's Fire Rescue Squad (as representatives and/or agents of the City acting on its behalf for the public good) be considered an integral *part of a "governmental authority."*

Having so found, our next subject of inquiry is whether the Appellee's communication of her accident to the rescue squad should be equated with a *"proper* governmental authority" to whom such a report could be made. The qualifying adjective: "proper" circumscribes the list of governmental authorities to exclude some, but not all, agencies that exist as an extension of state, county and local government. However, we do not intend to embark on an analysis as to the breadth of the phrase "proper governmental authority". This would be beyond the scope and necessity of the facts before us.

We do find, nonetheless, that the appearance of the Fire Rescue Squad to provide medical aid and transportation to the Appellee, under the City of Philadelphia's aegis as *parens patriae,* would cause that governmental agency (EMT employee) to appear to be a "proper" repository of "governmental authority" allowing for the Appellee to report the motor vehicle accident involving an unidentified/uninsured motor vehicle. It was for the trier-of-fact to weigh the credibility of the claimant/Appellee in regard to whether a report of the accident was communicated to the EMT employee. From the result, it is obvious that the court below believed the Appellee's account of what transpired. See *Dixon,* supra. We see no reason to disturb the finding of the court below in the absence of any indication that the purpose of MVFRL—to prevent fraud—is being compromised. *Id.; Hatcher,* supra.

No one denies that the Appellee was struck by a hit-and-run vehicle and sustained injuries requiring medical attention documented in the EMT employee's "Fire Rescue Service Report", as called for by the City of Philadelphia's Fire Department forms. In particular, the form completed and signed by the attending EMT employee contained information as to the time the rescue service was dispatched, arrival time at the location of service, name of patient and injuries complained-of. The report also contained the medical services which were performed and that the Appellee was transported to the nearest hospital for follow-up treatment.

With the inability of the Appellee to identify her assailant or the vehicle driven in the assault, any type of subsequent investigation by the police is not guaranteed to have produced a suspect to determine if he/she had insurance allowing for payment to the victim for her injuries.

Consequently, under the particular facts *sub judice,* we fail to detect how holding that the Appellee's failure to report the accident to a police officer, in contrast to an EMT employee, advances the preclusion of fraudulent claims. Cf. *Calabrese v. Motor Vehicle Accident Indemnification Corp.,* 43 A.D.2d 970, 352 N.Y.S.2d 221 (1974) (Parole officer, as a matter of law, is a peace officer for purpose of insurance law requiring notice to

police within 24 hours of accident); *Hanavan v. Motor Vehicle Accident Indemnification Corp.*, 33 A.D.2d 1100, 308 N.Y.S.2d 114 (1970) (Notification by claimant to State Police that she had been struck by hit-and-run vehicle satisfied reporting requirements of Insurance Law); *Rodriques v. Motor Vehicle Accident Indemnification Corp.*, 54 Misc.2d 361, 282 N.Y.S.2d 625 (1967) (Victim telling hospital guard of accident, which was recorded in hospital records, was sufficient to met "notice to police" requirement under N.Y. Insurance Law).

Accordingly, after assiduously reviewing the facts against the applicable statutory and case law, we reject the claims proffered by the Appellant.

Order affirmed.

JOHNSON, J., files a dissenting opinion.

Judge JOHNSON, dissenting.

I believe the trial court erred in admitting the hearsay declaration of the emergency medical technician. I also conclude that the Philadelphia Fire Rescue Squad is not a "proper government authority" within the meaning of Section 1702 of the Motor Vehicle Financial Responsibility Law (MVFRL) so as to render the striking vehicle uninsured. For these reasons, I must respectfully dissent.

Out-of-court statements which are offered to prove the declarant's state of mind are not within the interdiction of the hearsay rule. *Commonwealth v. Smith*, 523 Pa. 577, 594, 568 A.2d 600, 609 (1989). Likewise, an out-of-court statement is not hearsay if it is offered to explain a course of conduct. *Spotts v. Reidell*, 345 Pa.Super. 37, 42, 497 A.2d 630, 633 (1985). The waiver trial in this matter was brief. Counsel for Constitution State Service Company (CSSC) timely objected to any testimony regarding what the emergency medical technician said to Janine Gunter (the claimant) as hearsay. Waiver Trial Transcript, (W.T.T.), October 15, 1992, at 11, R.R. at 27a. The trial court reserved its ruling on the hearsay objection, wanting to first hear what was said. *Id.* at 12, R.R. at 28a.

The claimant's counsel then asked the following question on direct examination:

Q. Why did you not go to the police department to file the police report?

A. When I talked—when the guy in the ambulance was talking to me, he took the report and he said he would take care of it.

MS. DICHTER [CSSC's COUNSEL]: Same objection, Your Honor.

THE COURT: I'll overrule it. I'll hear it.

BY MR. SAGOT [CLAIMANT'S COUNSEL]:

Q. He told you he would take care of it?

A. Yes. He said he would take care of it.

MR. SAGOT: Thank you. I have no further questions of this witness.

*Id.* at 12–13, R.R. at 28a–29a.

Arguably, statements made to the claimant by the emergency medical technician would go to establish the claimant's state of mind just prior to her being transported to the hospital by a Philadelphia Fire Rescue ambulance. As CSSC correctly points out to this Court on appeal, the claimant's state of mind, on these facts and when reviewing this statute, is irrelevant.

Our supreme court instructs us that in seeking to invoke the state-of-mind exception to the hearsay rule, the proffered evidence must tend to make a material fact more or less probable, that is to say, the out-of-court statement must be relevant. *Commonwealth v. Smith, supra* 523 Pa. at 594, 568 A.2d at 609. *Compare Baker v. Morjon,* 393 Pa.Super. 409, 415, 574 A.2d 676, 679 (1990) (state of mind of plaintiff upon learning of casket's deteriorated condition from third persons irrelevant to suit against defendant where not causally related to defendant's tortious acts). The only possible fact which would be illuminated by the hearsay evidence before us on this appeal is the reason why the claimant did *not* report her accident to the police. But an unidentified vehicle can qualify as an uninsured vehicle only if the accident involving the

unidentified vehicle *has been reported* to the police or proper governmental authority. 75 Pa.C.S. § 1702; *Jackson v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 394 Pa.Super. 274, 575 A.2d 626 (1990). Therefore, the reasons for *not* reporting the accident to any particular governmental agency, including the police, cannot make the alleged reporting to another agency any more or less probable. I can only conclude that the out-of-court statements relating to what the emergency medical technician would do with the information given to him by the claimant are totally irrelevant.

The majority states that the claimant:

was preoccupied with establishing her state of mind at the time the conversation took place.... She believed the incident would be reported to the police because of the technician's remarks to that effect.

Majority op. at 300. The majority goes on to conclude:

The linchpin to admissibility is that the *remarks were made* and not whether the EMT employee carried out his statements to notify the police.... Thus, we hold meritless the hearsay claim raised by the Appellant, concluding that the remarks testified to were both relevant (they increased the probability of the material fact at issue—whether the Appellee communicated to the EMT employee about the "hit and run") and admissible.

*Id.* at 300.

The relevancy analysis may precede, but remains separate and apart from, the hearsay analysis. I cannot join my colleagues in believing that statements claimed to be made by the emergency room technician in response to the claimant's statements, if any, increase the probability that the claimant made those statements. This does not advance a "state-of-mind" analysis. Moreover, the only evidence in the record certified to this Court on the issue of what the claimant said to the technician is her testimony quoted above:

A. When I talked—when the guy in the ambulance was talking to me, he took the report and he said he would take care of it.

At trial, the claimant identified Gerald Brown as "the guy in the ambulance." Brown was not called as a witness, nor was his deposition taken or submitted to the trial court. The claimant did not testify as to what was included in "the report" which she claims to have given to Gerald Brown, and the claimant does not even contend that a written report was ever made by the Philadelphia Fire Rescue Squad. Thus, we are left with a request that we accept the hearsay statement of the technician as increasing the probability of material facts which are found nowhere in the record. The majority would admit the hearsay statements to buttress statements by the claimant which were never placed before the trier of fact. This writer is unable to join in such a conclusion. This argument—that the statement increased the probability of a material fact at issue—is an attempt to find admissibility based upon circumstantial evidence of a fact other than the matter asserted. This is not an argument based upon the "state-of-mind" exception. Where my colleagues advance two disparate arguments, without citation to authority, I am at a loss as to which is intended to support their conclusion that the out-of-court statements regarding a report to the Philadelphia police is both relevant and admissible. I find the statements to be both irrelevant and inadmissible, on the basis that the statements do not advance any material facts and are, consequently, irrelevant to any issue before the trier of fact.

The potential harm is apparent from the analysis of the trial court. The court concluded its Opinion of April 28, 1993, with this paragraph:

The evidence concerning what was said by the paramedic to Ms. Gunter [the claimant] was highly relevant, as it tended to negate the inference that because Ms. Gunter did not report the accident to the police her claim was not legitimate. Therefore, this Court's ruling admitting the evidence concerning the paramedic's conversation with Ms. Gunter was not error, as it was not inadmissible hearsay, but rather was admissible as relevant and material to Ms. Gunter's claim.

Opinion, Glazer, J., April 28, 1993, at 5. The flaw in this analysis is that the trial court, and the majority on this appeal, both find that the Philadelphia Fire Rescue Squad is a "proper government authority" under 75 Pa.C.S. § 1702. With this legal conclusion established, any attempt to report the same incident to another government authority, the Philadelphia Police Department, is rendered unnecessary and immaterial. On this basis alone, I would reverse the judgment of the trial court.

Turning to the other issue raised on this appeal, I conclude that the Philadelphia Fire Rescue Squad is not a proper governmental authority for reporting accidents which involve unidentified motorists. It may be assumed, for purposes of this appeal, that the Fire Department of the City of Philadelphia, and its sub-departments including the Fire Rescue Squad, are part of a governmental *entity*. I have not found any analysis in the Opinion of my colleagues, however, on the narrow issue of whether either the Fire Department or its Fire Rescue Squad is an "authority" as that word is used in defining an uninsured motor vehicle in 75 Pa.C.S. § 1702. The majority finds that a fire rescue service maintained by a city is a unit of local government. I would not dispute this. This is not sufficient to justify the quantum leap then made by my colleagues in finding it "appropriate to hold that members of Philadelphia's Fire Rescue Squad ... be considered an integral *part of a 'governmental authority.'* " Majority op. at 239.

The MVFRL includes, as one of its definitions of an uninsured motor vehicle, the following:

### § 1702.  Definitions

The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:

*         *         *         *         *         *

**"Uninsured motor vehicle."** Any of the following:

*         *         *         *         *         *

(3) An unidentified motor vehicle that causes an accident resulting in injury *provided the accident is reported to the police or proper governmental authority* and the claimant notifies his insurer within 30 days, or as soon as practicable thereafter ... (emphasis added).

There is no dispute that this matter was not reported to the police. Since the contested out-of-court statement by the emergency medical technician may not be used to establish the truth of what he asserted, there is no evidence that there was any attempt to report it to the police. Therefore, we must find that the accident was reported to the "proper governmental authority" to find an uninsured vehicle to support the claim advanced on this appeal.

It may be helpful to begin by establishing what the legislature could not have intended in using the term "proper governmental authority." 1 Pa.C.S. § 1922(1). It would be absurd to conclude that the legislature meant to place all bodies or boards authorized by law to enact ordinances or adopt resolutions for a particular municipality on a par with the police for purposes of implementing the MVFRL. *See, for example,* 42 Pa.C.S. § 102; 53 P.S. § 302. In determining the intention of the General Assembly, we are called upon to consider, among other matters, the mischief to be remedied by the statute and the object to be obtained, as well as the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c)(3), (4), and (6).

The purpose of the requirement that the accident be reported to either the police or proper governmental authority was to prevent fraud and the attempted recovery of benefits in cases where accidents were alleged to have been caused by "phantom" vehicles. *Jackson v. Pennsylvania Financial Responsibility Assigned Claims Plan, supra* 394 Pa.Super. at 276 n. 2, 575 A.2d at 628 n. 2; Ronca, Sloane and Mundy, *Pennsylvania Motor Vehicle Insurance: An Analysis of the Financial Responsibility Law* (1986), § 6.5. A proper authority under this rubric would need to be an agency of government with the power to investigate accident claims and the resources to accomplish this task. Part of the purpose in

requiring reporting is to allow for the possibility that the hit-and-run operator will be apprehended through effective police work. The inability of a victim of a hit-and-run to identify the assailant or the vehicle, in any particular case, does not militate against a statutory requirement that all alleged hit-and-run incidents be reported in order for the claimant to become eligible for benefits under the MVFRL.

In considering whether the Philadelphia Fire Rescue Squad should qualify as a "proper authority" for reporting purposes, there is much in the record on this appeal which the majority has elected to ignore. Edwin R. Boardman was the driver of the Rescue Squad vehicle which answered the emergency call involving the claimant. His deposition was taken and was included in the record at trial. W.T.T. at 18, R.R. at 34a. Boardman testified that emergency medical technicians do not receive any specific training regarding the investigation of accidents. Transcript of Deposition, Boardman, (T.D.B.), October 13, 1992 at 7, R.R. at 53a. He stated that the E.M.T. personnel do not investigate accidents. *Id.* Furthermore, he testified that, in the normal course of his duties, he does not take any information regarding the facts of an accident, in terms of who was involved, who may have been at fault, and what specifically might have happened. *Id.* at 9, R.R. at 55a. In those cases where they may have occasion to inquire as to how fast a vehicle may have been traveling, that information is forwarded by the E.M.T. to the doctors in the emergency room, to assist in medical management. *Id.* Boardman testified that an E.M.T. does not ask any questions or take any record of the identity of the vehicles involved in any accident, such as license tag numbers or names of operators of the vehicles. *Id.*

There is no procedure within the Fire Rescue Squad administration established to report facts of either an injury or an accident to the police department. *Id.* at 10–11, R.R. at 56a–57a. The police are usually dispatched simultaneously with the fire rescue units. *Id.* Boardman reiterated that the only thing he ever relates to the police is the name of the patient who is transported to the hospital. *Id.* at 17, R.R. at 63a.

Boardman testified that the job description of an E.M.T. does not include any requirement or expectation that anything is reported to the police. *Id.* at 18–21, R.R. at 64a–67a.

The Fire Rescue Service Report, a form utilized by the City of Philadelphia Fire Department through its Fire Rescue Squads, does not contain any places for recording information concerning facts surrounding an automotive accident or a hit-and-run. The form does contain blocks to permit the E.M.T. to record the location type where medical service was rendered and the route log (road and weather conditions). There is nothing on the form, not even an open remarks section, to provide for the recording of vehicular information.

The only evidence before the trier of fact negates any suggestion that an emergency medical technician is trained, equipped or authorized to explore the facts surrounding a motor vehicle collision or incident, beyond collecting those facts necessary to administer appropriate medical assistance. There is nothing on the record to suggest that information volunteered to a member of an Emergency Fire Rescue Squad would be transmitted to anybody or any entity not involved in the medical care and treatment of the patient. This being so, how then can the Emergency Fire Rescue Squad qualify as a "proper authority" for the receipt of information concerning a hit-and-run incident?

The cases cited by the majority to support its conclusion are inapposite. The New York cases are easily distinguished from the unique facts presented on this appeal. All of the New York cases involved the proper interpretation of Section 608(b) of the New York Insurance Law which requires a report of the motor vehicle accident to be made within 24 hours or as soon as reasonably possible to a "police, peace or judicial officer in the vicinity or to the commissioner." *Calabrese v. Motor Vehicle Accident Indemnification Corporation,* 43 A.D.2d 970, 352 N.Y.S.2d 221 (1974), merely held as a matter of law, without any analysis, that a parole officer is a peace officer within the meaning of § 608(b). *Hanavan v. Motor Vehicle Accident Indemnification Corporation,* 33 A.D.2d 1100, 308 N.Y.S.2d 114 (1970), held that notifying the New

York State Police that one has been struck by an unknown vehicle complies with the § 608(b) statutory requirement. To the same effect, *Rodriguez v. Motor Vehicle Accident Indemnification Corporation*, 54 Misc.2d 361, 282 N.Y.S.2d 625 (1967), held that a hospital special patrolman, who wore a shield and a blue uniform similar to that of a New York City policeman and who possessed the duty and right to arrest was a "peace officer" for the purpose of § 608(b), "particularly where the rights of a non-English speaking litigant are concerned."

None of the New York cases went further than to consider whether a particular individual met the requirements of a "peace officer" or a "police officer" under the statute requiring reporting to a "police, peace or judicial officer." None of the New York cases considered, or discussed, whether the employing authority or entity was a "proper.... authority" under New York law for reporting purposes. Each of the cases were devoid of any dispute that a hit-and-run was reported; the only issue was whether the individual receiving the report was a proper individual, under the act, to receive the report.

We need not subscribe to the argument advanced by CSSC that the Pennsylvania Department of Transportation would be the only "proper governmental authority" other than the police to whom an accident could be reported. Rejection of that argument, however, provides no basis for declaring the Philadelphia Fire Rescue Squad as a "proper government authority" under the MVFRL. There is nothing inconsistent with espousing a liberal interpretation of the MVFRL while rejecting the suggestion that the Fire Rescue Squad is a contemplated reporting alternative to the Philadelphia Police Department on the facts here presented.

I am willing to examine the interpretation of the phrase "proper governmental authority" on a case-by-case basis. It is enough to conclude, on the record before us, that the Philadelphia Fire Rescue Squad falls far short of satisfying the threshold requirements for inclusion in that category. The purpose of the section we now review was to prevent fraud and the collection of benefits in cases where accidents

were alleged to have been caused by "phantom" vehicles. The declaration of Fire Rescue Squads as proper authority for reporting hit-and-run accidents, where the squads have never deemed it to be within their responsibility or authority to either receive or report such information, does nothing to advance that legislative purpose.

Accordingly, I dissent. I would reverse the judgment and direct entry of judgment in favor of the Constitution State Service Company.