**Blazquez v. Pennsylvania Financial Responsibility Assigned Claims Plan**

*Mark C. Hanamirian,* for plaintiff.
*Michael Senoyuit III,* for defendant.

HALBERT, *J.,* August 18, 1999—By agreement among the parties, this case was submitted to the court for resolution based upon the trial briefs and accompanying exhibits.

The controversy at issue involves plaintiff Luis Blazquez' eligibility for benefits under the Pennsylvania Financial Responsibility Assigned Claims Plan. No factual issues require a credibility determination.

Plaintiff Blazquez submitted a report to the Pennsylvania Department of Transportation on May 3, 1994, stating that his bicycle was struck by an unidentified taxicab, causing him to sustain certain injuries. The accident was alleged to have occurred nearly a month beforehand, on April 5, 1994.

The plan refused to provide benefits, contending that the alleged accident was not reported to the police or a proper governmental authority within 30 days as required under 75 Pa.C.S. §1702. The court agrees with the plan's

position that PennDOT does not qualify as a "proper governmental authority" for purposes of the 30-day reporting requirement, but finds this to be a close question requiring clarification by higher court authority.

The purpose underlying the section 1702 reporting requirement is the prevention of fraudulent claims. *Owens v. The Travelers Insurance Co.,* 450 Pa. Super. 242, 675 A.2d 751 (1996); see also, *Jackson v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 394 Pa. Super. 274, 575 A.2d 626 (1990). By reporting an incident to the police, there is an opportunity to respond to and investigate the circumstances of an accident.

In certain circumstances, it is has been determined to be sufficient to report an accident to a governmental authority other than the police. When a governmental authority is involved in responding directly to an accident scene and taking firsthand reports, there is no question that a report taken by it satisfies the reporting requirement under section 1702. See *Gunter v. Constitution State Service Co.,* 432 Pa. Super. 295, 638 A.2d 233 (1994), *alloc. denied,* 539 Pa. 678, 652 A.2d 1324 (1994). As such, a report filed with the Philadelphia Fire and Rescue Squad in response to an accident call has been held sufficient for preserving plan benefits. *Id.*

The issue becomes more complicated in other situations. In *Owens, supra,* it was determined that a report filed with a governmental agency such as the Pennsylvania Department of Labor was insufficient to preserve plan benefits since the agency failed to qualify as a "proper governmental authority" under section 1702.

The rationale for such determination was twofold. First, the Pennsylvania Department of Labor does not partake in direct responses to accident scenes and is not in a position to observe injuries firsthand, which is necessary for preventing fraudulent claims against the plan. Second, governmental agencies like the Department of Labor are not generally involved in reporting or investigating motor vehicle accidents, which is also highly relevant in the fraud prevention context. *Id.* at 245-46, 675 A.2d at 752-53.

It is unfortunate that PennDOT does not fit as neatly into any category as either the Philadelphia Fire and Rescue Squad or Department of Labor.

While PennDOT is vested with statutory power to conduct accident investigations and compiles statistical data on accidents, this generally is undertaken for safety reasons and PennDOT is not ordinarily involved in interviewing motorists and assessing fault. *Shoyer v. City of Philadelphia,* 96 Pa. Commw. 75, 506 A.2d 522 (1986) (discussing PennDOT's investigative mandate under 75 Pa.C.S. §3754). The functions of PennDOT therefore stand apart from that of an investigative body such as a municipal police department.[1]

---

1. Pursuant to sections 3747, 3753 and 3754 of title 75, PennDOT is charged with compiling statistical data and reviewing accident reports for accident prevention purposes, traffic safety, and the informational needs of state and federal agencies. Nowhere is PennDOT directed to investigate specific accidents for purposes of fault assessment or determining the identity of motorists.

Unlike a rescue squad or accident response team, PennDOT does not have employees on the scene of an accident who have an opportunity to directly observe an injured party and take a firsthand report from an injured pedestrian or motorist.

While these distinctions exist, there is no doubt that PennDOT's nexus to automobile accidents is far more direct than an agency such as the Pennsylvania Department of Labor and that a motorist who does not immediately report an accident to the police may, as a matter of common sense, believe that later reporting it to PennDOT will preserve claims involving an unidentified/ uninsured vehicle.

In the course of assessing whether the Philadelphia Fire and Rescue Squad and Department of Labor qualify as "proper governmental authorities" for reporting purposes, the Superior Court, in both *Gunter, supra* and *Owens, supra,* comment upon PennDOT in this context.

This court is unable to discern the impact of the discussion given what would appear to be disparate results reached in these two cases by different Superior Court panels and given that the matter was addressed in dicta. Had there been a direct dispute involving this specific question, then there would have been an opportunity to assess the issue in a comprehensive manner.

In *Gunter,* the assigned claims plan evidently acknowledged that PennDOT would be a proper governmental authority while arguing that the Philadelphia Fire and Rescue Squad did not meet the definition. The Superior Court, however, seemingly rejected this concession, find-

ing that reference to the terms "department" and "proper governmental authority" were exclusive from one another. In apparently determining that the term "proper governmental authority" does not include PennDOT from a definitional perspective, the Superior Court panel explicated:

"Likewise, we do not subscribe to the view espoused by the appellant that the Pennsylvania Department of Transportation would be the only other 'proper governmental authority' to whom an accident could be reported. . . . We find most compelling the fact that in the definitional section of the MVFRL (75 Pa.C.S. §1702) both terms appear: 'Department,' which includes the Department of Transportation or Insurance Department, and 'uninsured motor vehicle,' whereby *the latter makes no reference to the term 'department'* as the optional governmental body (in addition to the police) to which a report could be made if an accident by an unidentified vehicle occurred. Rather, the legislature inserted the phrase 'proper governmental authority' as the alternative source with whom a report could be lodged involving an 'uninsured motor vehicle.'" *Id.* at 305, 638 A.2d at 238.

Reaching what would appear to be a different position, a separate Superior Court panel in *Owens* adopted the viewpoint that PennDOT was a proper source for reporting accidents, stating: "if a particular governmental authority is not one that is ordinarily charged with the reporting or investigating of motor vehicle accidents, such as the police or *the Department of Transportation,*

we must examine whether it is in a unique position to prevent fraud as effectively as the police." 450 Pa. Super. at 246, 675 A.2d at 753.

The trial court is bound to follow higher court authority on issues such as the one presented. Given that the question at bar was only addressed in dicta, and that even in that context, it is not clear as to whether a specific position has been adopted on the matter by the higher courts, we find it appropriate to address it anew.

Throughout case law authority, there is a repetitive theme of fraud prevention underlying the 30-day reporting requirement. Keeping this in mind, the court, after weighing all factors presented, does not find that reporting an accident to a statewide agency such as PennDOT will play any meaningful role in eliminating the threat of fraud unless PennDOT promptly relays any reports filed with it to local police and law enforcement authorities.

Legitimizing such reports may, in fact, open the door to a practice whereby local municipal law enforcement is entirely circumvented. When there is no other reliable means by which to verify the accident, such as through a report filed with a fire and rescue squad responding to the accident, the possibilities of fraud abound.

In turning to the factual circumstances presented, one finds that while the plaintiff most certainly was injured, there is no saying whether such injuries were caused as stated or involved an unidentified cab. No corroborative evidence validating the plaintiff's claim is presented.

This matter could have been investigated had the accident been timely reported to the police or a proper gov-

ernmental authority. Had an entity such as a municipal rescue squad responded and taken a report, there would have been firsthand contact with the claimant and an opportunity for such entity to relay information to the police for follow-up investigation.

Aside from the fraud issue, it goes without saying that if the accident occurred, as stated, and had been timely reported, the police would have had the opportunity to attempt to identify the cab company at issue. Any chance of successfully identifying the alleged culprit, which may be minimal in the first place, is further diminished when a party, such as the plaintiff, waits nearly a month before reporting the accident and reports it to PennDOT.

Based upon the foregoing considerations, the court finds in favor of the plan, denying the plaintiff's coverage claim.