**Estate of Estelle HELSEL, Deceased, By and Through Clarence Helsel, Executor of the Estate and Clarence Helsel, Individually,**

v.

**COMPLETE CARE SERVICES, L.P., Robert Lethbridge and Randy Davis, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Dec. 5, 2001.
Decided May 7, 2002.

---

John M. Skrocki, Philadelphia, for appellants.

Ronald Lebovits, Philadelphia, for appellee.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and DOYLE, Senior Judge,[1] and KELLEY, Senior Judge.

1. The decision in this case was reached prior to the date when Judge Doyle and Judge Kelley assumed the status of senior judge on January 1, 2002.

OPINION BY Judge SMITH–RIBNER.

Complete Care Services, L.P., Robert Lethbridge and Randy Davis (together, CCS) appeal by permission from the order of the Court of Common Pleas of Montgomery County that overruled in part their preliminary objections to an amended complaint filed by the estate of Estelle Helsel, deceased, by and through Clarence Helsel, executor (Estate), and by Clarence Helsel individually. CCS questions whether it, Lethbridge and Davis are entitled to governmental immunity under Sections 8541–8564 of the Judicial Code, 42 Pa.C.S. §§ 8541–8564, because, as alleged in the amended complaint, they were designated to act and did act "on behalf of" the County of Cambria (County) in their role as the administrators of a County owned and operated nursing home.

I

The first amended complaint alleges that Estelle Helsel (Helsel) became a total-care resident of the Laurel Crest Manor Nursing Home (Nursing Home) on September 21, 1998. She required feeding and hydration through a Percutaneous Endoscopy Gastronomy (PEG) tube. Because of the formula used, she suffered loose stools. CCS personnel allegedly failed to keep her skin clean or to bathe her for long periods, and she suffered from excoriated buttocks, thighs and perineal area, causing pain, bleeding and restlessness. CCS personnel failed to address this medical problem, although they sometimes restrained her without medical approval. On December 13, 1998, Helsel traumatically dislodged her PEG tube. CCS personnel failed to notify a medical doctor, and instead they permitted un-trained workers to re-insert a Foley catheter. Helsel's stomach was perforated in that procedure. Contrary to medical protocol, the workers did not test the replacement but began administering food, medicine and fluids. By early the next morning Helsel exhibited signs of shock and acute bodily distress. Helsel was taken to a hospital where she underwent emergency surgery to repair her perforated stomach. Helsel died in the hospital on January 2, 1999.

The Estate and Clarence Helsel filed the amended complaint against CCS advancing multiple causes of action including willful misconduct, fraud, wrongful death, survival action and battery. The complaint alleges that CCS is a privately owned, for-profit Pennsylvania corporation in the business of providing nursing care and related health services. Its website states that it is a leader in privatization of county nursing homes. Although the amended complaint does not attach a copy of a contract, it alleges that the County contracted with CCS to manage, operate and control the Nursing Home. It asserts that CCS was the "administrator" as defined in Section 103 of the Older Adults Protective Services Act, Act of November 6, 1987, P.L. 381, *as amended*, renumbered by Section 2 of the Act of December 18, 1996, P.L. 1125, 35 P.S. § 10225.103, through its agents, servants and employees who exclusively and independently designed and implemented policies and procedures to ensure patient care at the Nursing Home.[2]

CCS filed preliminary objections including a demurrer asserting that the Estate and Clarence Helsel failed to state a claim due to governmental immunity. The trial court sustained certain preliminary objec-

---

**2.** Section 103 defines "Administrator" as "[t]he person responsible for administration of a facility. The term includes a person responsible for employment decisions or an independent contractor."

tions; however, it overruled several others, including the objection in the nature of a demurrer based upon the claim of immunity. The court granted CCS's request for an amended order stating that "pursuant to 42 Pa.C.S.A. § 702(b), it is the opinion of the court that this Order involves a controlling question of law as to which there is substantial ground for difference of opinion such that an immediate appeal from it may materially advance the ultimate termination of the matter." Tr. Ct Order of March 22, 2001. This Court granted CCS's petition for permission to appeal.

## II

■ CCS first notes that the eight exceptions to local agency immunity enumerated in Section 8542(b) of the Judicial Code, *as amended,* 42 Pa.C.S. § 8542(b), do not include any exception for medical malpractice or professional liability, in contrast to Section 8522(b)(2) of the Judicial Code, *as amended,* 42 Pa.C.S. § 8522(b)(2). A wrongful death or medical negligence action against a county facility is barred by statutory governmental immunity. *Morris v. Montgomery County Geriatric and Rehabilitation Center,* 74 Pa.Cmwlth. 363, 459 A.2d 919 (1983). The courts consistently have interpreted 42 Pa.C.S. § 8542 as providing immunity to municipal health care workers. *City of Philadelphia v. Glim,* 149 Pa.Cmwlth. 491, 613 A.2d 613 (1992). In *Weissman v. City of Philadelphia,* 99 Pa.Cmwlth. 403, 513 A.2d 571 (1986), the Court held that allegations that a doctor employed by the city failed to diagnose a tumor and dispensed medication in a parking lot constituted an assertion of negligence and that nothing in the complaint substantiated that the doctor acted outside the scope of his employment or as an independent contractor.

CCS quotes the definition of "government agency" from Section 102 of the Judicial Code, *as amended,* 42 Pa.C.S. § 102: "Any Commonwealth agency or any political subdivision or municipal or other local authority, or any officer or agency of any such political subdivision or local authority." It cites *Gunter v. Constitution State Service Co.,* 432 Pa.Super. 295, 638 A.2d 233 (1994), where the question was whether reporting of a hit-and-run accident to an emergency medical technician summoned to render assistance satisfied the requirement in Section 1702 of the Motor Vehicle Financial Responsibility Law, *as amended,* 75 Pa.C.S. § 1702, that an accident be reported to the police or "proper governmental authority." The court rejected a contention that only the Department of Transportation satisfied that phrase, referring to the definition of "[g]overnmental agents" in Black's Law Dictionary 696 (6th ed.1990) as "[t]hose performing services and duties of a public character for benefit of all citizens of community."

Further, CCS quotes the definition of "[e]mployee" in Section 8501 of the Judicial Code, *as amended,* 42 Pa.C.S. § 8501:

Any person who is acting or who has acted on behalf of a government unit whether on a permanent or temporary basis, whether compensated or not and whether within or without the territorial boundaries of the government unit, including any volunteer fireman and any elected or appointed officer, member of a governing body or other person designated to act for the government unit. Independent contractors under contract to the government unit and their employees and agents and persons performing tasks over which the government unit has no legal right of control are not employees of the government unit.

CCS contends that if a person is acting in the interests of a local agency, he or she is considered to be an "employee" under Section 8501 and is entitled to immunity.

As for the question of independent contractors, CCS notes that in *Murray v. Zarger*, 164 Pa.Cmwlth. 157, 642 A.2d 575 (1994), the Court referred to an earlier statement that the proper guide to be used is that from *Hammermill Paper Co. v. Rust Engineering Co.*, 430 Pa. 365, 370, 243 A.2d 389, 392 (1968), where the Supreme Court stated that certain factors should be considered:

'Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time.' (Citations omitted.)

In *Murray* the Court concluded that a person who assisted a high school swimming coach, with the knowledge of the athletic director and for a one-time payment of $300, acted on behalf of the School District in assisting with interscholastic athletics and was an "employee" entitled to immunity under Section 8501.[3]

CCS asserts that according to the complaint CCS, Lethbridge and Davis were engaged in the performance of their duties as the administrators of a county-owned and operated long-term-care facility and that they are entitled to governmental immunity just as any other employee of the Nursing Home. The Estate and Clarence Helsel have pleaded a case against the administrators of the Nursing Home only, CCS contends, in order to circumvent statutory immunity. To permit such liability would cause instability in county-run, long-term-care facilities. Even accepting the averments of the complaint that CCS, Lethbridge and Davis operated and controlled the Nursing Home and were bound to uphold various regulatory requirements, they were still acting on behalf of the County.

The Estate and Clarence Helsel respond that CCS has pointed to no case where a private business such as CCS was afforded immunity for its actions in managing a county-owned health facility, and in any event governmental immunity statutes were never intended to protect private actors. If so, no consequence would ever attach to private actors' negligence or dereliction of their duties. They note that the amended complaint avers the private character of CCS and avers, upon information and belief, that CCS entered into a contract with the County under which CCS had control of the manner in which the Nursing Home was managed, including selection, hiring and retention of staff and scheduling and day-to-day supervision of staff, who reported to and took directions from CCS and its agents.

---

**3.** CCS further cites *Brennon v. Philadelphia Gas Works*, 146 Pa.Cmwlth. 312, 605 A.2d 475 (1992), where the Court held that the Philadelphia Gas Works, which was identified as a collection of real and personal property owned by the City and managed by a contracted manager, was a local agency. After analyzing relevant provisions of the Philadelphia Home Rule Charter, the Court stated that, although the City may enter into contracts for management of its facilities, the City retained responsibility for operation of the facilities for the production and transmission of gas and the setting of rates and that the immunity enjoyed by the City extended to Philadelphia Gas Works as an integral part of services offered by the City.

■ The Estate and Clarence Helsel stress that the Management Services Agreement (Agreement) provides in Section 9(b) that the relationship between the Owner and Manager with respect to the facility shall in all ways be that of an independent contractor.[4] They argue that CCS ignores that independent contractors are excluded from the definition of employees in Section 8501 of the Judicial Code, and it does not address the factors for determining if a relationship is one of employer-employee or owner-independent contractor. The Estate and Clarence Helsel maintain that the Agreement is silent on control over the manner in which work is to be done, but it is reasonable to assume that the County entered into the Agreement to detach itself from day-to-day management responsibilities, which re-quires a high degree of skill. Further, CCS is engaged in a distinct occupation or business. As described in its website: "CCS is the leader in the privatization of county nursing homes" and it "provides management to over 25,000 county, non-profit long-term care and assisted living beds and related facilities in the Pennsylvania, Maryland, New Jersey, New York, Virginia, Illinois and Texas marketplaces." Complaint, ¶ 7.

The Estate and Clarence Helsel note that in *Gunter* the court held that a fire-rescue squad that was a by-product of the city's efforts to implement a statute for the benefit of the health, safety and welfare of the public was a unit of local government/agency. The court also indicated, however, that an ambulance service that was a truly independent, nonprofit corpo-

---

**4.** In a reply brief CCS asserts that the Estate and Clarence Helsel improperly rely upon the Agreement between CCS and Cambria County because it was not attached to the amended complaint when the trial court considered the preliminary objections. CCS cites *Glenn v. Horan*, 765 A.2d 426 (Pa.Cmwlth.2001), which states that in ruling upon a demurrer a court must accept as true all well-pled material allegations as well as all inferences reasonably deducible therefrom; to sustain a demurrer it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by refusing to sustain.

The Court notes that under Pa. R.C.P. No. 1030(a): "[A]ll affirmative defenses including … immunity from suit … shall be pleaded in a responsive pleading under the heading 'New Matter'." In *Combs v. Borough of Ellsworth*, 151 Pa.Cmwlth. 21, 615 A.2d 462 (1992), the Court noted that preliminary objections raising the defense of immunity may be considered if the opposing party waives the procedural defect or if the affirmative defense is apparent on the face of the pleading because a cause of action is made against a governmental body and it is apparent that the cause of action does not fall within any of the exceptions to governmental immunity. In the present case only the first rationale applies because, as CCS stresses, the County was not sued.

Pursuant to Pa. R.C.P. No. 1019(i), when a claim or defense is based upon a writing, the pleader shall attach a copy or the material part thereof, but if the writing is not accessible it is sufficient for the pleader to so state, together with the reason, and to set forth the substance of the writing. In their complaint the Estate and Clarence Helsel alleged the existence of the contract and the substance of the power that it conferred upon CCS regarding the management of the Nursing Home. Although it did not expressly state that the contract was not accessible, the contract was between other parties and presumably was not in their hands. Had CCS filed a proper responsive pleading, i.e., an answer with new matter, it would have had to admit the existence of the contract and to attach any portions relevant to its responses. Thus CCS's contention that the Agreement should not now be considered seeks to penalize the Estate and Helsel because of CCS's procedural defect of pleading. Further, CCS, in stating its opposition, refers to the content of other provisions of the Agreement to bolster its position on the merits. Under the particular circumstances of this case, the Court concludes that the Agreement, whose existence and substance was pled in part initially, may be relied upon now.

ration would not be immune. Further, *Weissman* implied that the doctor involved could have been liable if he had been an independent contractor. They argue that under 42 C.F.R. § 483.75(d) and 28 Pa. Code § 201.18(e) the governing body of a facility such as the Nursing Home must appoint an administrator who is responsible for the management of the facility, including enforcing regulations relating to the level of health care and safety of residents. They contend that CCS was not a "potted plant" but rather was obligated to ensure that the facility was properly staffed, equipped, trained and prepared to deliver care to the residents.

### III

■ This Court's review of an order of a trial court overruling preliminary objections is limited to determining whether the trial court's findings are supported by competent evidence and whether the trial court abused its discretion or committed an error of law. *White v. Associates in Counseling and Child Guidance, Inc.*, 767 A.2d 638 (Pa.Cmwlth.2001). The Court agrees with the Estate and Clarence Helsel that CCS acted "on behalf of" and "in the interests of" CCS in the course of promoting its business of selling management services for a profit and that it is not entitled to immunity. Moreover, as they assert, contracts between public county entities and private actors should not constitute bridges by which immunities intended to protect public funds are extended to private actors.

■ As the Supreme Court recently repeated, the overall purpose of the governmental immunity provisions of Chapter 85

of the Judicial Code is to limit governmental exposure to tort liability for its acts and to preserve the public treasury against the possibility of unusually large recoveries in tort cases. *Sphere Drake Insurance Co. v. Philadelphia Gas Works*, 566 Pa. 541, 782 A.2d 510 (2001). Furthermore, according to provisions of the contract, CCS's status was that of an independent contractor engaged to provide management services. The mere fact that CCS performed a function for which the County would enjoy immunity if the County performed it directly does not mean that CCS was immune.

In *Smith v. Porter Township, Clinton County*, 141 Pa.Cmwlth. 244, 595 A.2d 693 (1991), an employee of an engineering firm under contract with a township performed duties that would otherwise be performed by a sewage enforcement officer. The Court concluded that, although the township was immune in regard to a claim of negligent issuance of a sewage disposal permit, the trial court would need to employ the analysis set forth in *County of Schuylkill v. Maurer*, 113 Pa.Cmwlth. 54, 536 A.2d 479 (1988) (citing *Hammermill Paper Co.*), to determine whether the firm was an employee or an independent contractor. If it was an employee it would be entitled to immunity; if it was an independent contractor, it would not. In one sense any independent contractor is acting on behalf of the government agency to accomplish the purpose of the contract. Nevertheless, cases such as *Smith* and *Maurer* show a lack of support for the sweeping assertion of CCS that any action on behalf of or in the interest of a governmental agency entitles the private actor to governmental immunity.[5] The order of

---

**5.** *See also Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 8, 568 A.2d 931, 935 (1990), where an employee of an independent contractor was injured, and the Supreme

Court stated: "Plainly, independent contractors ... performing work for Commonwealth agencies are not employees of the agencies, and, thus, do not constitute Commonwealth

the trial court is affirmed, and this case is remanded for discovery and further proceedings.

case is remanded to the court for further proceedings.

Jurisdiction is relinquished.

### ORDER

AND NOW, this 7th day of May, 2002, the order of the Court of Common Pleas of Montgomery County is affirmed, and this

parties." Although the Port Authority was a Commonwealth party, the negligent employer was not.

The circumstances alleged in the amended complaint concerning the nature of CCS's overall enterprise and its relationship with the County, as well as the fact that the Agreement expressly defines CCS to be an independent contractor, stand in marked contrast to the situation in *Sphere Drake Ins. Co.*, where the Supreme Court concluded that the entity providing management services to the Philadelphia Gas Works was a local agency entitled to governmental immunity. The court noted that the stipulated facts showed that the City of Philadelphia incorporated the non-profit corporation at issue in that case for the sole purpose of managing the City's gas works and that the City's control over the corporation is pervasive. The Mayor of the City selects the board of directors, and the City is responsible for indemnifying and holding harmless directors, officers and employees of the corpo-

ration. The corporation's authority is limited to that granted by the City, it must submit a budget for approval, and its personnel are subject to approval of the Philadelphia Gas Commission within the Department of Public Property. Should the corporation ever be dissolved, its assets would vest in the City. In addition, employees of the corporation are treated comparably to other City workers, and they participate in a pension plan maintained pursuant to a City ordinance. Because the non-profit corporation exists only to assist the City in meeting the needs of its citizens with respect to natural gas service, and the City is so thoroughly involved in its operations, the Supreme Court concluded that it was a "local agency" within the meaning of 42 Pa.C.S. § 8501. Obviously no similar concerns are present in regard to CCS, which is an independent, for-profit corporation engaged in the business of providing management services for institutions in multiple states.