THOMAS J. NIEHAUS *v.* COWLES BUSINESS
MEDIA, INC.
(SC 16644)

Sullivan, C. J., and Norcott, Palmer, Vertefeuille and Owens, Js.

Argued October 21, 2002—officially released April 22, 2003

*Thomas E. Minogue, Jr.*, for the appellant (plaintiff).

*Kenneth W. Gage*, with whom, on the brief, was *Jamal M. Dawkins*, for the appellee (defendant).

SULLIVAN, C. J. This certified appeal involves two questions. First, we consider the certified question of whether the Appellate Court properly dismissed the plaintiff's appeal on the ground that the plaintiff had not provided an adequate record for review.[1] We conclude that the Appellate Court improperly dismissed the appeal. Second, we also consider, on the merits, whether the trial court properly granted the defendant's motion for summary judgment.[2] We conclude that the trial court improperly granted the defendant's motion for summary judgment. Accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court's opinion sets forth the relevant undisputed facts and procedural history. "In 1995, the plaintiff [Thomas J. Niehaus] negotiated with his then employer, Simba Information, Inc. (Simba), for additional compensation to be paid to him in the event that Simba sold its stock to the defendant [Cowles Business Media, Inc.], depending on the time of the sale. The

---

[1] We certified the following issue for appeal: "Did the Appellate Court properly dismiss this appeal on the ground that the plaintiff had not provided an adequate record for review?" *Niehaus* v. *Cowles Business Media, Inc.*, 258 Conn. 949, 950, 788 A.2d 99 (2001).

[2] We clarify here the procedural posture in which this question is before the court. Before filing its brief in this case, the defendant filed a "Motion to Submit Statement of Alternative Grounds for Affirmance," in which it sought permission to file an untimely statement of an alternative ground for affirmance. The plaintiff did not object, and this court granted the motion. The defendant claimed as an alternate ground for affirmance that, "the Superior Court properly granted summary judgment in favor of [the defendant], and therefore the Supreme Court should affirm the underlying judgment." At oral argument before this court, both the plaintiff and the defendant indicated their willingness for this court to review the plaintiff's claim on the merits were we to determine that the record was adequate for review. Although the ground raised by the defendant is not an alternative ground for affirming the *Appellate Court*'s judgment, which the defendant was entitled to have this court review pursuant to Practice Book § 84-11, in the interest of judicial economy we review whether the *trial court*'s judgment can be affirmed on this alternative ground.

negotiations led the plaintiff and Simba to enter into a participation agreement (agreement), dated June 16, 1995, at which time the plaintiff had been employed by Simba for nearly two years. The agreement provided for the payment of a valuation amount to the plaintiff if a sale of Simba stock occurred. The participation period began on the date of the agreement and ended on March 31, 1999. The sale of Simba in fact occurred, and was completed and closed on January 16, 1996, when the defendant purchased all of the stock of Simba.

"On March 19, 1997, the defendant terminated the plaintiff's employment without cause. On or about April 1, 1997, the plaintiff received $151,229, less applicable taxes, as payment under the terms of the agreement. On June 15, 1999, the plaintiff commenced this action. The complaint alleges one count of breach of contract and one count of breach of the implied covenant of good faith and fair dealing. The complaint alleges that the plaintiff is entitled to receive an additional $151,229 under the terms of the participation agreement between him and Simba. On January 13, 2000, the defendant filed a motion for summary judgment as to both counts of the complaint. The defendant claimed that there was no genuine issue of material fact because the participation agreement was unambiguous and, therefore, as a matter of law, the plaintiff was not entitled to additional sums." *Niehaus* v. *Cowles Business Media, Inc.*, 66 Conn. App. 314, 314–15, 784 A.2d 426 (2001) (per curiam).

The basis of the defendant's motion for summary judgment was its claim that the agreement clearly and unambiguously provided that the plaintiff was entitled to only a pro rata portion of the valuation amount because he was terminated during the participation period. In support of this claim the defendant argued that the plaintiff, in his deposition, had conceded that paragraph four of the agreement, which contained the pro rata provision, set forth the amounts to be paid to

him in the event his employment was terminated. The plaintiff filed an opposition to the defendant's motion in which he claimed that the agreement reasonably could be interpreted to provide for a full, as opposed to a pro rata, payment and argued that his deposition testimony, far from removing such ambiguity, actually supported his interpretation of the agreement. On March 7, 2000, the trial court granted the defendant's motion for summary judgment and rendered judgment for the defendant.

On appeal to the Appellate Court, the plaintiff claimed that the trial court improperly concluded that the agreement was clear and unambiguous. Id., 315. The Appellate Court, however, declined to review the plaintiff's claim, concluding that the plaintiff had failed to provide an adequate record for review. Id., 317. Thus, the Appellate Court dismissed the appeal. Id.

I

The plaintiff claims that the Appellate Court improperly dismissed his appeal. We agree.

The following additional facts and procedural history are relevant to this claim. The trial court endorsed the last page of the defendant's motion for summary judgment by circling the word, "[g]ranted," signing that page and noting: "The language of the Participation Agreement is clear and unambiguous, especially paragraph 4 (c). Therefore, there are not any genuine issues of fact." The plaintiff did not seek an articulation of the court's ruling.

In refusing to review the merits of the plaintiff's claim, the Appellate Court stated: "[W]e are unable to discern the factual and legal basis of the court's decision from the two sentences noted as its decision. This court has no way of knowing the basis of the trial court's ruling. The record contains the agreement and the plaintiff's

deposition testimony." *Niehaus* v. *Cowles Business Media, Inc.*, supra, 66 Conn. App. 317.

We begin our analysis by noting that the question of whether the Appellate Court properly dismissed the appeal for an inadequate record is one of pure law. Accordingly, our review is plenary. See, e.g., *State* v. *Butler*, 262 Conn. 167, 174, 810 A.2d 791 (2002). "It is well established that the appellant bears the burden of providing an appellate court with an adequate record for review. Practice Book § 61-10; *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 33–34, 727 A.2d 204 (1999); *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52, 717 A.2d 77 (1998)." *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 394, 757 A.2d 387 (2000) (*Community Action*).

The question we must decide is whether, under the circumstances of this case, the trial court's two sentence judgment granting the defendant's motion for summary judgment constituted an adequate basis for appellate review. We conclude, as we recently did under similar circumstances in *Community Action*, that the trial court's ruling on the defendant's motion for summary judgment provided an adequate record for review.

The principal issue on appeal in *Community Action* was whether the defendant insurer had a duty to defend the plaintiff insured in a negligence action brought against the plaintiff by one of its students (Poe).[3] Id., 389. On appeal, we faced the threshold question of whether the Appellate Court properly had dismissed the plaintiff's appeal of the trial court's summary judgment for lack of an adequate record. Id., 392. We noted that the trial court in that case had simply stated that

[3] Poe was a pseudonym given to a six year old child in order to protect her privacy. *Community Action*, supra, 254 Conn. 389 n.2.

the defendant's motion was, " 'Granted . . . . See *Middlesex Mutual Assurance Co.* v. *Rand* . . . .' " (Citation omitted.) Id., 392.

In considering whether the Appellate Court properly had dismissed the plaintiff's appeal, we noted the following: "The issue presented to the Appellate Court was whether the trial court properly had rendered summary judgment for the defendant rather than the plaintiff. In order to resolve that issue, the Appellate Court was required to determine whether the defendant was obligated to defend the plaintiff in the action filed against it on behalf of Poe. The question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of Poe's complaint with the terms of the insurance policy. . . . Thus, the plaintiff's appeal from the judgment of the trial court required the Appellate Court to make a de novo determination of whether the allegations of Poe's complaint state[d] a cause of action which appear[ed] on its face to be within the terms of the policy coverage. . . . In such circumstances, the facts are not in dispute and, because the reviewing court's review is de novo, the precise legal analysis undertaken by the trial court is not essential to the reviewing court's consideration of the issue on appeal." (Citations omitted; internal quotation marks omitted.) Id., 395–96. Ultimately, we concluded that the Appellate Court improperly had determined that the record was inadequate for review. Id., 396–97.

As it was asked to do in *Community Action*, the Appellate Court in this case was asked to review a question of law, namely, whether, in granting summary judgment, the trial court properly had concluded that the agreement was clear and unambiguous. Thus, as in *Community Action*, in this case the plaintiff's appeal from the judgment of the trial court required the Appellate Court to make a de novo determination. Specifi-

cally, the Appellate Court was required to provide de novo review of the agreement and determine whether the trial court properly had concluded that it was clear and unambiguous. Likewise, as in *Community Action*, there were no facts in dispute relevant to whether the agreement was clear and unambiguous,[4] and the precise legal analysis undertaken by the trial court was not essential to consideration of the issue on appeal.

We do note that it is true that, as the defendant points out, in *Community Action* we stated that the trial court's citation of a case that was "not directly on point," but addressed an "analogous issue" in a similar manner, indicated that "the trial court correctly identified the applicable law." Id., 397. Nevertheless, we do not believe that the trial court's failure in this case to provide a citation suggestive of its legal reasoning deprived the Appellate Court of an adequate record, especially in light of the fact that there was no dispute on appeal as to the governing legal principles at issue in the present case.[5]

We also reject the defendant's argument that the Appellate Court properly dismissed the appeal because it cannot be determined whether the trial court considered the plaintiff's deposition testimony in granting the defendant's motion for summary judgment. As noted previously, both the plaintiff and the defendant relied upon the plaintiff's deposition testimony in litigating the summary judgment motion before the trial court. Nevertheless, the trial court's statement that "[t]he lan-

[4] We note that in its memorandum in support of its motion for summary judgment, the defendant stated, "[t]he facts of this case are undisputed." Similarly, the plaintiff averred in its memorandum in opposition that "[t]he express language of the agreement and the basic facts are undisputed."

[5] Although we conclude that the ruling of the trial court is adequate for review, our decision should not be construed as a general endorsement of decisions of such brevity. Appellate review is facilitated when the trial court provides a memorandum of decision setting forth the analysis of the issues presented.

guage of the Participation Agreement is clear and unambiguous, especially paragraph 4 (c)," and the fact that the court never referred to the deposition testimony in its decision make it clear that the trial court did not rely upon such testimony. Thus, the question on appeal was simply whether the trial court had properly determined that the language of the agreement was clear and unambiguous. The record was adequate to determine this issue. In fact, the defendant properly conceded as much in oral argument before this court. Accordingly, we conclude that the record was adequate for review and that the Appellate Court improperly dismissed the appeal.

## II

The defendant claims that the trial court properly granted its motion for summary judgment because the terms of the agreement make clear that the plaintiff was entitled to only a pro rata portion of the valuation amount.

The following additional facts are relevant to this issue. The agreement at issue provides in relevant part: "3. Determination of payments (a) Except as otherwise set forth herein, to the extent that a Sale occurs during the Participation Period, [the plaintiff] shall receive (i) the Valuation Amount, of which 50% shall be payable on March 31, 1997 and 50% shall be payable on March 31, 1999, plus (ii) interest as determined in paragraph 3 (d) below. (b) Notwithstanding the foregoing, however: (i) In the event that a Sale is completed and closed prior to March 31, 1997, then [the plaintiff] shall receive 50% of the Valuation Amount on March 31, 1997 and the remaining 50% on March 31, 1999. . . ."

The agreement also provided "4. Payments Upon Termination . . . . (c) If [the plaintiff's] employment by the Company terminates on or prior to March 31, 1999 by reason of termination by the Company without

cause, then the Company shall pay to [the plaintiff] a pro rata portion of the Valuation Amount (if and at the time a Sale occurs), based upon the number of months during the Participation Period in which [the plaintiff] was employed by the Company . . . ."

It is also undisputed that: (1) the participation period began June 16, 1995, and ended March 31, 1999; (2) on January 16, 1996, a sale of the company occurred; (3) the valuation amount was $302,458; (4) on March 19, 1997, the defendant terminated the plaintiff's employment without cause; (5) on or about April 1, 1997, the plaintiff received $151,229, less applicable taxes, as payment under the agreement.

The defendant argues that paragraph 4 (c) provides that the plaintiff is entitled to a pro rata portion of the valuation amount because he was terminated without cause before the participation period ended. The defendant also argues that the limit on payment is a function of the timing of the termination in relation to the *participation period,* not the *sale,* and that there is no other paragraph in the agreement that deals with payment upon termination without cause.

The plaintiff argues that the agreement reasonably can be construed to provide him with full payment pursuant to paragraph 3 (b) (i). He further argues that because paragraph 4 (c) provides that a pro rata payment must be made "if and at the time a Sale occurs" and is to be based upon the total numbers of months the plaintiff "was employed," the provision was to apply only if he had been terminated *before* the sale occurred. The plaintiff further argues that paragraph 4 (c) was not intended to apply in the event that he was terminated *after* a sale, as undisputedly occurred in this case. We agree with the plaintiff that the trial court improperly concluded that the paragraph 4 (c) was clear and unambiguous.

" 'Our standard of review of a trial court's granting of summary judgment is well established. Pursuant to Practice Book § 17-49, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Such questions of law are subject to plenary appellate review.' " *Amoco Oil Co.* v. *Liberty Auto & Electric Co.*, 262 Conn. 142, 147, 810 A.2d 259 (2002). " 'In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts.' " *Sherwood* v. *Danbury Hospital*, 252 Conn. 193, 201, 746 A.2d 730 (2000).

The governing law applicable in this case is also well established. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 495, 746 A.2d 1277 (2000). " 'A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary

meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms.' " Id., 498.

In applying this law to the facts of the present case, we begin by noting that the agreement provides in paragraph 3 (b) (i) for payment of the entire valuation amount to the plaintiff if a sale occurs during the participation period. Paragraph 4 (c), however, limits that payment to a pro rata payment under certain circumstances. The question in this case is whether the trial court properly concluded that paragraph 4 (c) clearly and unambiguously limits the plaintiff's payment to a pro rata portion where the plaintiff's employment was terminated *after* a sale of the company.

As noted previously, paragraph 4 (c) provides that, if the plaintiff's employment were terminated prior to March 31, 1999, without cause, the plaintiff would be entitled to a pro rata portion of the valuation amount, "(if and at the time a Sale occurs), based upon the number of months during the Participation Period in which [the plaintiff] was employed by the Company . . . ." Thus, the express language of the agreement uses the contingent phrase, "if and at the time a Sale occurs," to identify the time at which a pro rata payment, if it is to be made, must occur. Moreover, such a payment must be based on the number of months that the plaintiff "was employed" at the time of the sale. Because such a payment would be a logical impossibility if the plaintiff was still employed at the time of the sale, we conclude that the agreement can reasonably be interpreted *not* to provide for a pro rata payment in such an instance. Where the plaintiff was terminated *after* a sale, the agreement reasonably may be interpreted to provide that he is entitled to the *full* valuation amount pursuant to paragraph 3 (b) (i). Thus, under the facts of the present case, because it is undisputed

that the plaintiff was terminated *after* a sale of the company, the agreement reasonably may be interpreted to have entitled him to the full valuation amount rather than the partial payment that he received.

Our conclusion that the agreement reasonably may be interpreted in such a fashion is bolstered by the fact that the defendant has failed to put forth any contrary textual argument as to how to interpret the provision of paragraph 4 (c) that a pro rata payment must be made "if and at the time a Sale occurs . . . ." Although we agree with the defendant's statement at oral argument that, had the agreement stated "[i]f [the plaintiff's] employment by the Company terminates on or prior to [the sale, as opposed to 'on or prior to March 31, 1999'] by reason of termination by the Company without cause, then the Company shall pay to [the plaintiff] a pro rata portion of the Valuation Amount," the plaintiff's interpretation of the agreement would be more likely, that is not the question we face. The question is whether it is clear and unambiguous, from the words the parties to the agreement did use, that paragraph 4 (c) applies where the sale occurs before termination. For the reasons already set forth, we do not think that these words are clear and unambiguous, notwithstanding the fact that the parties to the agreement could have chosen words that would have made the plaintiff's interpretation more likely.

We emphasize, however, that we are only concluding that the agreement is not clear and unambiguous, as opposed to what the trial court concluded. Whether or not paragraph 4 (c) or paragraph 3 (b) (i) actually applies under the facts of the present case will need to be determined as a question of fact at trial upon remand. See *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, supra, 252 Conn. 495 (where contract language is not clear, interpretation is question of fact to be determined by reference to parties' intent).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court with direction to deny the defendant's motion for summary judgment and for further proceedings according to law.[6]

In this opinion the other justices concurred.

---

[6] We note that the only basis upon which the defendant sought summary judgment on the second count of the complaint, in which the plaintiff alleged breach of the implied covenant of good faith and fair dealing, was the defendant's claim that the agreement provided for only a pro rata portion of the valuation amount and that the plaintiff could not recover more through the covenant of good faith and fair dealing than he could recover in contract. In light of our conclusion that the trial improperly concluded that the agreement could be interpreted as providing for only a pro rata payment, we direct the Appellate Court to reverse the trial court's granting of summary judgment as to both counts of the plaintiff's complaint.