RITA GOLDBERG, CONSERVATRIX (ESTATE OF JANET A. COLONARI) *v.* HARTFORD FIRE INSURANCE COMPANY ET AL.
(SC 17037)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued March 10—officially released June 15, 2004

*Matthew M. Horowitz*, for the appellant (named defendant).

*Jeffrey W. Keim*, for the appellee (plaintiff).

ZARELLA, J. The sole issue presented in this appeal is whether the named defendant[1] surety, Hartford Fire Insurance Company (Hartford Fire Insurance), is liable to the plaintiff, Rita Goldberg, as conservatrix of the estate of Janet A. Colonari, for the entire misappropriation of the estate's funds by the former conservator, Gregoire R. Sideleau, or whether it is liable only for those misappropriated funds relating to the sale of real property. We conclude that Hartford Fire Insurance is liable only for the deficiency relating to the sale of real property and, therefore, we reverse the judgment of the trial court.

We set forth the following relevant facts. On May 10, 1994, the Bridgeport Probate Court appointed Sideleau as conservator of Colonari's estate.[2] The appointment decree provided that "[Sideleau] has accepted the position of trust, and . . . the court dispenses with the requirement of a bond."

Thereafter, on September 4, 1996, Sideleau petitioned the Probate Court for permission to sell Colonari's real property. At this time, the Probate Court required Sideleau to post a bond in the amount of $20,000, with sufficient surety. The bond was executed on a standard bond form, as required by rule 2.1.02 of the Connecticut Probate Practice Book.[3] The form contains three

---

[1] Gregoire R. Sideleau, the principal on the bond issued by the named defendant, Hartford Fire Insurance Company, also was named as a defendant. Sideleau was defaulted for failure to appear and did not participate in this appeal.

[2] The May 10, 1994 appointment decree indicates that the Probate Court found clear and convincing evidence that Colonari was incapable of managing her affairs because she suffered from schizophrenia.

[3] Rule 2.1.02 of the Connecticut Probate Practice Book provides: "A CONTRACT OF SURETYSHIP is a written undertaking by a person or an authorized business entity to indemnify an estate up to a stated amount for damages resulting from the failure of the fiduciary to discharge the duties of his or her trust according to law. Such contract shall be on the PROBATE BOND form provided to the courts of probate by the Probate Court Administrator;

options, with accompanying boxes to be marked, indicating the nature of the principal's (Sideleau's) authority. The form provides in relevant part: "As appears in the records of this court, the . . . principal has been:

"[Option 1] appointed to the POSITION OF TRUST above indicated and appeared in court and accepted said trust.

"[Option 2] authorized and empowered by order of the court to sell and convey or mortgage certain real property belonging to the estate.

"[Option 3] authorized to compromise a doubtful and disputed claim."

Below these options, the bond form provides in relevant part: "The CONDITION OF THIS OBLIGATION is that said principal and any co-fiduciary of whom probate bond is required shall faithfully perform the duties of this trust and administer and account for all monies and other property coming into his or her hands, as fiduciary, according to law . . . ." Of the three options, only option 2, relating to the sale and conveyance of real property, had been marked.

Both Sideleau, as principal, and Hartford Fire Insurance, as surety, signed the bond, and the Probate Court thereafter granted Sideleau's petition for sale, having determined that "[t]he fiduciary . . . presented a bond in the amount fixed by the court, and with sufficient surety . . . ." The sale of Colonari's real property closed on November 18, 1996.

Thereafter, as a result of Sideleau's misappropriation of the estate's funds,[4] the Probate Court ordered his

however, a court of probate may accept a CONTRACT OF SURETYSHIP not on the PROBATE BOND form if its terms are the same as those of the contract on the PROBATE BOND form."

[4] The statewide grievance committee found that Sideleau had "engaged in ethical misconduct in the manner in which he served as . . . Colonari's conservator," that he "failed in his obligation to . . . Colonari," and that "[t]he accountings submitted by [Sideleau] failed to properly account for

removal as conservator and directed him to submit a final accounting, which he presented in January, 2000. The Probate Court subsequently appointed the plaintiff as successor conservatrix of Colonari's estate. The court required the plaintiff to post a $10,000 bond with sufficient surety, which she did.[5] The court accepted Sideleau's final accounting with exceptions, noting numerous deficiencies, including a discrepancy of $250 relating to Sideleau's sale of Colonari's real property.

The plaintiff thereafter brought this action on the bond against Sideleau and Hartford Fire Insurance to recover the deficiencies. The case was referred to an attorney trial referee, who issued his findings of fact and decision.[6] The attorney trial referee found that Sideleau had "failed to properly account for $12,017.92 withdrawn from the assets of the estate and owes this sum to the plaintiff." The attorney trial referee recommended that "[j]udgment should enter in favor of the plaintiff against [Hartford Fire Insurance and Sideleau in that amount]."

Hartford Fire Insurance filed an objection to the report of the attorney trial referee, challenging his legal conclusions regarding its liability for the entire deficiency. The trial court rendered judgment in accordance with the attorney trial referee's report, thereby overruling Hartford Fire Insurance's objection. The trial court reasoned that "[t]he language of the standard bond form is clear and unambiguous with regard to the duties of

the receipt and distribution of funds belonging to . . . Colonari." The committee determined that Sideleau should be presented to the Superior Court for discipline in light of his violation of the Rules of Professional Conduct.

[5] Option one of the standard probate bond form, which indicated that the "principal has been . . . appointed to the POSITION OF TRUST . . . and appeared in court and accepted said trust," had been marked.

[6] The transcript of the hearing before the attorney trial referee indicates that both the plaintiff and Hartford Fire Insurance conceded that the facts were not in dispute and that the issue regarding Hartford Fire Insurance's liability on the bond involved a question of law.

the fiduciary, who must administer and account for all monies and other property coming into his or her hands as fiduciary according to law. . . . As to the boxes on the bond form, it is unclear as to whether all which could apply should be marked, whether there was an omission in failing to mark box number one, whether the [box] marked specifically define[d] the surety's obligations, or whether the boxes are merely explanatory. Hence, there is an ambiguity in the standard probate bond form. . . . [S]uch ambiguity must be construed against the surety."

With respect to the Hartford Fire Insurance's claim that General Statutes § 45a-164[7] provides for a specific,

[7] General Statutes § 45a-164 provides in relevant part: "(a) Upon the written application of the conservator of the estate of any person . . . after such notice as the court may order and after hearing, the court may authorize the sale or mortgage of the whole or any part of, or any easement or other interest in, any real property in this state of such person . . . if the court finds it would be for the best interests of the parties in interest to grant the application.

"(b) The court may empower the conservator . . . to execute a conveyance of such property or to execute a note and a mortgage to secure such property upon giving a probate bond faithfully to administer and account for the proceeds of the sale or mortgage according to law, unless the court finds that there is in force, for such fiduciary, a probate bond in an amount and with security determined in accordance with section 45a-139 or unless the bond is dispensed with in accordance with section 45a-169. The application shall set forth a description of the property to be sold or mortgaged.

"(c) After a hearing, the court may authorize that the property be sold to the fiduciary either directly or under the provisions of section 45a-167, except that if a public sale is ordered, the fiduciary may be the purchaser only if the sale is made under section 45a-167. In the case of any proposed sale to a fiduciary, any notice shall indicate that the fiduciary is the proposed purchaser.

"(d) If any person having an interest in such real property is not in being or is not ascertained or is under a disability, the court shall appoint a guardian ad litem to represent the interests of such person at the hearing. A guardian ad litem shall not be necessary if such person is represented by a guardian or by a conservator, unless the sale of the property is to such guardian or conservator or such guardian or conservator has a potential conflict as an applicant or otherwise.

"(e) The order and the sale or mortgage under the order shall be conclusive upon all persons then or thereafter existing whose interests have been so represented."

rather than a global, bond for the sale of real property, the trial court concluded that § 45a-164 "requires a bond in accordance with [General Statutes] § 45a-139[8] for the sale of property by a principal, unless dispensed with by statute." The court further concluded that, "[w]hile § 45a-164 requires a probate bond for the sale of property, it cannot be read as limiting the surety's liability to [the] same when read in [con]junction with § 45a-139 (a). The bond issued by [Hartford Fire Insurance] was to secure the faithful performance by [Sideleau] of the duties of his trust, not just the sale of the property."

Hartford Fire Insurance appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General

Although § 45a-164 was the subject of minor amendments in 1996 and 1998; see Public Acts 1998, No. 98-219, § 22; Public Acts 1996, No. 96-91, § 1; those amendments have no bearing on the merits of this appeal. For ease of reference, we refer to the current revision of § 45a-164 throughout this opinion.

[8] General Statutes § 45a-139 provides: "(a) As used in this title, except as otherwise provided, 'bond' or 'probate bond' means a bond with security given to secure the faithful performance by an appointed fiduciary of the duties of the fiduciary's trust and the administration of and accounting for all moneys and other property coming into the fiduciary's hands, as fiduciary, according to law.

"(b) Except as otherwise provided, every bond or probate bond shall be payable to the state, shall be conditioned for the faithful performance by the principal in the bond of the duties of the principal's trust and the administration of and accounting for all moneys and other property coming into the principal's hands, as fiduciary, according to law, and shall be in such amount and with such security as shall be required by the judge of probate having jurisdiction pursuant to rules prescribed by the Supreme Court. If bond is required of a fiduciary, the fiduciary's appointment shall not be effective until the bond has been accepted by the Court of Probate.

"(c) A probate judge may waive the requirement of a bond if the assets of the estate are less than twenty thousand dollars, or if the amount of the estate which is not restricted by Probate Court order is less than ten thousand dollars."

Although § 45a-139 was the subject of a technical amendment in 2001; see Public Acts 2001, No. 01-127, § 4; that amendment has no bearing on the merits of this appeal. For ease of reference, we refer to the current revision of § 45a-139 throughout this opinion.

Statutes § 51-199 (c) and Practice Book § 65-1. We reverse the judgment of the trial court.

Hartford Fire Insurance claims that the trial court improperly determined that the October, 1996 bond subjected it to liability for all deficiencies, including those unrelated to the sale of Colonari's real property. It argues that we must determine the scope of its obligation under the bond through the text of the bond and the governing statute, § 45a-164 (b), and that an analysis of these provisions compels the conclusion that the bond subjects it only to limited liability for Sideleau's misappropriation of $250 in connection with the sale of Colonari's real property. Hartford Fire Insurance also contends that the trial court's determination runs contrary to the text of the bond and the standard bond form, and further renders certain provisions of title 45a of the General Statutes inoperable.

The plaintiff maintains that the trial court correctly concluded that, on the basis of § 45a-139 and the plain language of the bond, Hartford Fire Insurance is liable for the entire deficiency of $12,017.92. Specifically, the plaintiff maintains that "[t]he court correctly concluded that § 45a-139 . . . is the operative statute with respect to [Hartford Fire Insurance's] liability under the bond . . . ." In support of her claim of the statute's applicability, the plaintiff highlights the similar language contained in both § 45a-139 and the bond, namely, that the principal shall account "for all monies and other property coming into [his] hands . . . ." General Statutes § 45a-139. The plaintiff also contends that the plain language of the bond reflects that it is a general or "global" bond, rather than a specific bond, and that the trial court properly construed the bond strictly against the surety, Hartford Fire Insurance.

The issues presented in the present case require us to determine the intent of the parties to the suretyship

contract and the Probate Court in ordering the $20,000 bond, which we ascertain by examining the language of the bond form and the circumstances surrounding the transaction. See, e.g., *Poole* v. *Waterbury*, 266 Conn. 68, 87–88, 831 A.2d 211 (2003). The circumstances surrounding the transaction include the relevant proceedings in the Probate Court, both prior to and contemporaneously with Sideleau's petition for permission to sell Colonari's real property. If the terms of the contract and circumstances of the transaction reveal that the parties intended to be bound by a global bond, then Hartford Fire Insurance will be liable for the entire deficiency of $12,017.92; in contrast, if the parties intended to execute a specific bond, then Hartford Fire Insurance will be liable only for the $250 deficiency[9] relating to the sale of Colonari's real property.

When we are called upon to review a trial court's conclusions of law, our review is plenary. E.g., *Burton* v. *Mottolese*, 267 Conn. 1, 25, 835 A.2d 998 (2003). We therefore "must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000).

We previously have recognized that "[t]he liability of sureties is to be determined by the specified conditions of the bond . . . . [W]hen a bond is required by statute, a court will read the statute into the contract between the principal, surety and obligee." (Citation omitted; internal quotation marks omitted.) *Southington* v. *Commercial Union Ins. Co.*, 254 Conn. 348, 358–59, 757 A.2d 549 (2000); accord *Ames* v. *Commissioner of Motor Vehicles*, 267 Conn. 524, 530, 839 A.2d 1250 (2004). More-

---

[9] Hartford Fire Insurance concedes that it also would be liable for interest accruing from the date that the claim was filed on behalf of Colonari's estate.

over, as with the interpretation of all contracts, we must construe the instrument "to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *Poole* v. *Waterbury*, supra, 266 Conn. 87–88, quoting *Niehaus* v. *Cowles Business Media, Inc.*, 263 Conn. 178, 188, 819 A.2d 765 (2003).

"A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity . . . must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Poole* v. *Waterbury*, supra, 266 Conn. 88, quoting *Niehaus* v. *Cowles Business Media, Inc.*, supra, 263 Conn. 188–89. Moreover, "[t]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous. . . . By contrast, language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion." (Citations omitted; internal quotation marks omitted.) *Poole* v. *Waterbury*, supra, 88.

"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive con-

tract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Southeastern Connecticut Regional Resources Recovery Authority* v. *Dept. of Public Utility Control*, 244 Conn. 280, 290, 709 A.2d 549 (1998); accord *Poole* v. *Waterbury*, supra, 266 Conn. 88.

An examination of the bond form reveals that the box corresponding to the second option, which "authorize[d] and empower[ed]" Sideleau to sell and to convey Colonari's real property, clearly was marked, thereby indicating the restricted nature of the bond. Furthermore, the circumstances surrounding the transaction indicate the bond's limited scope. We note that the Probate Court waived the requirement of a bond to cover Sideleau's actions when it appointed him as conservator in May, 1994. Moreover, no evidence was presented to the court, either prior to or in conjunction with the filing of the application for permission to sell Colonari's property, to suggest the need for a global bond covering all of Sideleau's duties as conservator. The only bond deemed necessary was the $20,000 bond required by the court in conjunction with Sideleau's application for permission to sell Colonari's real property. Although not dispositive, these facts further support the conclusion that the bond was limited in scope. Accordingly, we conclude that both the parties to the suretyship contract, namely, Sideleau and Hartford Fire Insurance, as well as the Probate Court in requiring the bond, intended the bond to cover only Sideleau's actions in connection with the sale of Colonari's real property.

Having determined the nature of the parties' intent, namely, to secure a bond covering only Sideleau's actions relating to the sale of real property, we note that the Probate Court's authority to require such a

bond stems from the provisions of § 45a-164 (b),[10] which govern such transactions, rather than the provisions of § 45a-139 (b),[11] as the plaintiff contends. General Statutes § 45a-164 (b) provides in relevant part: "The court may empower the conservator . . . to execute a conveyance of such property . . . upon giving a probate bond faithfully *to administer and account for the proceeds of the sale* . . . according to law, unless the court finds that there is in force, for such fiduciary, a probate bond in an amount and with security determined in accordance with section 45a-139 or unless the bond is dispensed with in accordance with section 45a-169. . . ." (Emphasis added.) Thus, the Probate Court properly acted in accordance with its authority under § 45a-164 (b), and, therefore, we reject the plaintiff's claim that § 45a-139 rather than § 45a-164 (b) controls.

In claiming that the bond is global, the plaintiff fastens upon language in the bond form that provides that "[t]he CONDITION OF THIS OBLIGATION is that said principal and any co-fiduciary of whom probate bond is required shall faithfully perform the duties of this trust and administer and account for *all monies and other property coming into his or her hands*, as fiduciary, according to law . . . ." (Emphasis added.) This language, the plaintiff argues, imposes liability upon the surety for all of Sideleau's misappropriations and not just for those relating to the sale of Colonari's real property. In relying on this language, however, the plaintiff ignores the limiting portion of the excerpted phrase, which refers specifically to the principal's obligation "[to] faithfully perform the duties of *this trust* . . . ." (Emphasis added.) We believe that "this trust" logically refers to the box appending to the second of the three options that had been marked, namely, the option indicating the conservator's power to sell real property.

---

[10] See footnote 7 of this opinion.

[11] See footnote 8 of this opinion.

The Probate Court's decree, in which the Probate Court approved only Sideleau's "application for authority to sell certain real property," supports this interpretation of the limited scope of the bond.

Moreover, to read the terms, "this trust," out of the bond form would render them superfluous, in contravention of well established principles of contract interpretation. Furthermore, to construe "this trust" as encompassing all of the conservator's duties would render meaningless the three distinct options and accompanying boxes expressly set forth in the bond form. See, e.g., *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 674, 791 A.2d 546 (2002) ("[t]he law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous"). We decline to reduce these provisions to effective nullities.

The plaintiff nonetheless contends that the trial court properly construed the bond strictly against the surety, in line with applicable rules of construction. We disagree because, even if it is assumed that some ambiguity existed in the language of the bond form that would warrant strict construction against the drafter, in the present case, Hartford Fire Insurance did not draft the language of the bond form. Therefore, we see no persuasive reason to construe the language of the bond form against Hartford Fire Insurance under the circumstances of this case. See, e.g., *Levine* v. *Advest, Inc.*, 244 Conn. 732, 755–56, 714 A.2d 649 (1998) ("[A]mbiguous contractual language should be construed against the interest of the party that drafted it. . . . The plaintiffs did not draft . . . the parties' agreement, and consequently, to the extent that the defendant drafted ambiguous contracts, it cannot now claim the benefit of the doubt regarding the ambiguity." [Citations omitted.]); see also *Hartford Electric Applicators of Thermalux, Inc.* v. *Alden*, 169 Conn. 177, 182, 363 A.2d 135 (1975)

("[T]he contract was prepared by the defendants. When there is ambiguity, we must construe contractual terms against the drafter.").

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiff in the amount of $250.

In this opinion the other justices concurred.