# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 06-583

**B & S UNDERWRITERS, INC.**

**VERSUS**

**CONSTITUTION STATE SERVICES COMPANY, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 213,243
HONORABLE GEORGE CLARENCE METOYER, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JOHN D. SAUNDERS**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John D. Saunders, and Marc T. Amy, Judges.

**REVERSED AND RENDERED.**

**Kenneth Alfred Doggett**
**P.O. Box 13498**
**Alexandria, LA 71315-3498**
**(318) 487-4251**
**Counsel for Plaintiff/Appellant:**
**B & S Underwriters, Inc.**

**John Patrick Doggett**
**Provosty, Sadler, & DeLaunay**
**P.O. Drawer 1791**
**Alexandria, LA 71309-1791**
**(318) 445-3631**
**Counsel for Plaintiff/Appellant:**
**B & S Underwriters, Inc.**

**Jimmy Roy Faircloth, Jr.**
**Faircloth & Davidson, L.L.C.**
**P.O. Box 12730**
**Alexandria, LA 71315-2730**
**(318) 442-9533**
**Counsel for Defendant/Appellee:**
**Constitution State Services Company**

**Seth Andrew Schmeeckle**
**601 Poydras St., Suite 2775**
**New Orleans, LA 70130**
**(504) 568-1990**
**Counsel for Defendant/Appellee:**
**Constitution State Services Company**

**SAUNDERS, Judge.**

This cause of action arises from an alleged breach of a three party contract governed by Connecticut law and entered into in Louisiana. The parties consisted of an Insurer, a Manager and Constitution State Services, L.L.C. f/k/a Constitution State Services Company (hereinafter "CSSC"). The contract in question called for one of the parties, the Insurer, to pay a refundable initial service fee to CSSC. This initial service fee was refundable to the Insurer based upon conditions relating to the amount of money deemed as charges and fees received by CSSC.

The party deemed Manager under the contract brought this action claiming that CSSC owed it the full refund of the initial service fee. It based this claim on CSSC improperly allocating money that should be deemed charges and fees as expenses.

CSSC filed an exception of no right of action due to the contract specifically stating that it was Insurer that has a claim, if any, to reimbursement of the initial service fee, and not Manager. The trial court dismissed this exception.

We reverse, and render.

## FACTS AND PROCEDURAL HISTORY:

B&S Underwriters, Inc., (hereinafter "B&S"), is a managing general agent and third party administrator of insurance products. B&S developed and owned the workers' compensation insurance program issued by and licensed to Guarantee Mutual Life Company, (hereinafter "Guarantee Mutual").

As a result of a regulatory requirement of the State of Georgia, B&S was unable to provide claims administration services for the workers' compensation insurance sold in Georgia. B&S contacted CSSC, and entered into a contract wherein B&S and Guarantee Mutual transferred the entire open claims inventory and agreed to assign all future claims in the State of Georgia to CSSC for the provision of claims

services. In the 1994 contract, CSSC received a $1,000,000 initial service fee to protect against premature termination of the agreement due to incurring costs associated with setting up a place of business to handle the claims. The contract called for Guarantee Mutual to pay a $1,000,000 initial service fee to CSSC. This fee was to be reimbursed to Guarantee Mutual based upon certain thresholds being met by CSSC as they earned charges and fees. These reimbursements were to come when Guarantee Mutual submitted to CSSC, in writing, a request to have these reimbursements paid.

B&S brought a suit against CSSC for breach of contract. B&S alleged that it was owed reimbursement of the initial service fee. B&S served CSSC with its petition alleging that CSSC was using an improper procedure in calculating charges and fees and propounded discovery to CSSC. B&S claimed that the 1994 contract could be interpreted to include allocated lost adjustment expenses in calculating charges and fees and under such method of calculating charges and fees, CSSC had reached the threshold to reimburse all of the initial service fee.

CSSC filed the peremptory exception of no right of action claiming that B&S, even if all of the allegations in its petition were true, had no remedy under the 1994 contract. The trial court denied this exception.

CSSC then filed an answer to the B&S petition but did not answer the propounded discovery. Instead, CSSC filed a motion for summary judgment alleging that there was no ambiguity in the 1994 contract that charges and fees did not include allocated loss adjustment expenses, and as such, it was entitled to a judgment as a matter of law. This motion was granted.

B&S applied for and was granted a rehearing on CSSC's motion for summary

judgment. The trial court once again ruled in favor of CSSC's motion. B&S appealed.

This court, on its own motion pursuant to La.Code Civ.P. art. 927, can notice the peremptory exception of no right of action. The record reflects that B&S has no right of action under the 1994 contract against CSSC for the reimbursement of the initial service fee. As such, we reverse the trial court's ruling denying CSSC's exception of no right of action and assess all costs of this appeal to B&S.

## ASSIGNMENTS OF ERROR:

1.  Did the trial court err in finding that there was no genuine issue of material fact regarding the interpretation and application of the contracts between Constitution State Services Company, B&S Underwriters, Inc. and Guarantee Mutual Life Company and that defendant/appellee was entitled to judgment as a matter of law, by concluding that money deemed as "Allocated Lost Adjustment Expenses" was not to be included within "Charges and Fees" for purposes of calculating CSSC's obligation to refund the Initial Service Fee?

2.  Did the trial court err in failing to apply the "Annual Minimum Charge" defined in the 1994 contract for purposes of determining CSSC's obligation to refund the Initial Service Fee?

3.  Did the trial court err in granting CSSC's motion for summary judgment prior to its answering of discovery propounded to it by B&S?

## CSSC'S EXCEPTION OF NO RIGHT OF ACTION:

CSSC did not appeal the trial court ruling that dismissed its peremptory exception of no right of action. CSSC did submit some argument to this court that its exception of no right of action should have been granted, but did not claim it as an assignment of error. However, this court, on its own motion pursuant to La.Code Civ.P. art. 927, can notice the peremptory exception of no right of action. We choose to do so in this case.

Louisiana Code of Civil Procedure Article 927(B) states in pertinent part:

The nonjoinder of a party, or the failure to disclose a cause of action or a right or interest in the plaintiff to institute the suit, may be noticed by

3

either the trial or appellate court of its own motion.

B&S asserts in its petition that it is entitled to the return of remnants of an Initial Service Fee from CSSC under section VII of a 1994 contract between B&S, Guarantee Mutual and CSSC. We find that B&S has no right of action under the 1994 contract for return of any of the Initial Service Fee paid by Guarantee Mutual to CSSC.

The test for the application of the peremptory exception of no right of action is whether the plaintiff has the capacity or legal interest to enforce the rights asserted in the petition. *Babineaux v. Pernie-Bailey Drilling Co.*, 262 So.2d 328 (La.1972). This exception is a threshold device that terminates suits brought by one who cannot enforce the right asserted judicially. *Id.*

"Whether a plaintiff has a right of action is a question of law." *Mississippi Land Co. v. S&A Properties II, Inc.*, 01-1623, p.3 (La.App. 3 Cir. 5/8/02), 817 So.2d 1200. 1203. Because this suit is before us on a motion for summary judgment, we have the record from below before us for review. We will review this question of law *de novo* from the record before us and from the substance of the contract upon which plaintiff has claimed its right of action. *Id.* Therefore, we look to the 1994 contract to make a determination of what rights, if any, B&S has in recouping the Initial Service Fee as it has claimed in its petition.

The parties agree that Connecticut law applies to the interpretation of the 1994 contract per the following choice of law provision:

SECTION XVII - APPLICABLE LAW

This Agreement shall be governed by the Laws of the State of Connecticut.

Louisiana Civil Code Article 3540 allows for choice of law provisions such as

4

the one in the 1994 contract "except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." Louisiana Civil Code Article 3537 is the general article for selecting the law applicable to a contract. Under La.Civ.Code art. 3537 only Louisiana and Connecticut are states that could be chosen. We do not find any public policy that is offended in either state regarding this choice of law provision; therefore, we will apply Connecticut law.

Connecticut law is similar to Louisiana law when addressing the interpretation of contracts. A contract is interpreted so as to put into effect the intent of the parties. *Niehaus v. Cowles Bus. Media, Inc.*, No. 16644 (Conn. 4/22/03), 819 A.2d 765. The source in reaching the intent of the parties is the language used in the agreement. The language that the parties choose to put into the contract must be given its common usage and ordinary meaning. When this language is unambiguous, the contract is to be interpreted according to its terms. Courts are not to twist or torture words to attempt to import ambiguity where the substance of the agreement is clear. Any ambiguity that the court finds must come from the words in the contract itself, rather than one party's idea of what the terms mean. *Id.*

Page one of the 1994 contract denotes that Guarantee Mutual will be referred to as "Insurer", B&S as "Manager" and Constitution State Services Company as "CSSC".

The 1994 contract reads as follows:

SECTION I - APPLICABILITY OF AGREEMENT
This Agreement is between Insurer, Manager and CSSC. However, the right afforded by, and the duties set forth in, each section of the Agreement (or paragraphs and subsections thereof) apply only to the parties specifically referenced therein.

5

B&S claims it has a right to reimbursement of the Initial Service Fee under section VII of the contract, which states:

SECTION VII - CHARGES AND FEES
A.    Charges and Fees earned by CSSC under this Agreement will be determined as follows.

1.    CSSC will receive an Initial Service Fee of $1,000,000 payable by *Insurer* with $250,000 due June 9, 1994, and $250,000 due at the execution of this Agreement and $500,000 due August 1, 1994. If the Agreement is not executed by August 1, 1994, then $750,000 will be due on that date from the *Insurer*. The Initial Service Fee is fully earned upon payment and is non-refundable, except under the following conditions:

(a)    If during the term of this Agreement of the Charges and Fees paid to CSSC by *Insurer*, excluding the Initial Service Fee, Start Up Charges and Termination Costs, exceed $5,000,000, then CSSC will return $500,000 of the Initial Service Fee to *Insurer* within 5 business days of receipt of Insurer's written request for payment.

(b)    If during the term of this Agreement the Charges and Fees paid to CSSC by *Insurer*, excluding the Initial Service Fee, Start Up Charges and Termination Costs, exceed $10,000,000, then CSSC will return the remaining $500,000 of the Initial Service Fee to *Insurer* within 5 business days of receipt of *Insurer's* written request for payment, according to the following schedule:

| Total Charges and Fees | Initial Service Fee Returned |
|---|---|
| Greater Than or Equal to $10,000,000 and Less Than $11,000,000 | $100,000 |
| Greater Than or Equal to $11,000,000 and Less Than $12,000,000 | $100,000 |
| Greater Than or Equal to $12,000,000 and Less Than $13,000,000 | $100,000 |
| Greater Than or Equal to $13,000,000 and Less Than $14,000,000 | $100,000 |

6

Greater Than or Equal to $14,000,000                  $100,000

We find no reference to "Manager" in the relevant provision that B&S claims it has a right of reimbursement for the Initial Service Fee from CSSC. From the clear and unambiguous wording of the contract under section I, the right afforded by section VII, if any, is granted by the contract to "Insurer", Guarantee Mutual, and not "Manager" B&S.

As such, we find that CSSC's exception of no right of action should have been granted. B&S has no right of action under the 1994 contract for reimbursement of the Initial Service Fee. Accordingly, B&S cannot be afforded a remedy in this action. Therefore, we reverse the trial court's ruling and grant CSSC's peremptory exception of no right of action. Costs of the appeal are to be paid by B&S.

## CONCLUSION:

We conclude that, based on the clear provisions of the 1994 contract, CSSC's peremptory exception of no right of action shall be granted. The assignment of errors raised by B&S regarding whether Allocated Lost Adjustment Expenses should be included in the calculation of Charges and Fees, whether the Annual Minimum Charge should be applied and whether it was improper to grant CSSC's motion for summary judgment when discovery was outstanding are moot, as B&S has no remedy against CSSC under the 1994 contract. Therefore, we grant CSSC's exception of no right of action and dismiss B&S's suit with prejudice. We assess all costs of this appeal to B&S.

**REVERSED AND RENDERED.**